IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

REGENCY HOSPITAL COMPANY OF
NORTHWEST ARKANSAS, LLC                                              PLAINTIFF


V.                          NO.  4:08-CV-04177 GTE


ARKANSAS BLUE CROSS AND BLUE
SHIELD, A MUTUAL INSURANCE COMPANY                                   DEFENDANT


BRIEF IN SUPPORT OF ARKANSAS BLUE CROSS AND BLUE SHIELD'S
MOTION TO DISMISS, OR IN THE
ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

INTRODUCTION

Regency Hospital Company of Northwest Arkansas LLC ("RHC") has brought this lawsuit against Arkansas Blue Cross and Blue Shield, A Mutual Insurance Company ("ABCBS"), claiming that ABCBS owes RHC additional money for medical services provided by RHC to eight people. RHC claims that these eight individual were covered under health insurance policies issued by ABCBS or its affiliated companies, or under health benefit plans for which either ABCBS or an affiliate of ABCBS acted as claims administrator.[1] RHC further claims that it has standing to bring this lawsuit because it obtained an assignment of benefits from each of these eight individuals, and that RHC is entitled to additional payment on these

---

[1] ABCBS is affiliated with several companies, including one, known as USAble Corporation d/b/a BlueAdvantage Administrators of Arkansas ("BAAA") that organizes several medical provider networks and provides third party administration services for employer-sponsored self-funded employee welfare benefit plans. For ease of reference only, and without in any way diminishing the significance of the legal distinctions between ABCBS and the separate but affiliated entity, BAAA, that separate entity, which provides claims administration services to self-funded employee welfare benefit plans, will be referred to herein as "BAAA."

1

claims because representatives of ABCBS allegedly told RHC that benefits were paid based on "usual, customary and reasonable" charges. ABCBS has filed this Motion to Dismiss, or in the Alternative for Summary Judgment, because the claims in this case were properly paid under the terms of the relevant insurance policies or plan documents, because RHC's promissory estoppel claim is pre-empted by ERISA, and because RHC could not prove a claim for promissory estoppel as a matter of law.

## BACKGROUND

ABCBS and its affiliates have provider agreements with many, if not most, hospitals in Arkansas. These agreements establish the terms and conditions, including the rates, that are paid for medical services provided by that hospital to patients that are covered for health insurance by ABCBS or that are covered for health benefits under a self-funded employee welfare benefit plan that is administered by ABCBS or one of its affiliates. An important feature of these agreements is that the hospital agrees not to bill these patients for any excess hospital charges over the agreed amount, except for insurance deductibles or co-payment amounts set out in the applicable insurance policy or benefit plan. Hospitals operating under this type of arrangement are referred to as "in-network" providers.

Hospitals that do not have such a direct agreement with ABCBS or one of its affiliates are known as "out of network" providers. In such cases, the hospital is free to collect from its patient any amount that it charges that is greater than the amount of benefits payable under the

applicable insurance policy or health plan. Benefit payments due under the applicable insurance policy or health plan may be made directly to the insured, instead of to the hospital.

RHC is a special type of hospital known as a long-term acute care hospital or "LTAC." LTACs treat patients who no longer need the services of a general acute care hospital, but who continue to need medical services that cannot be provided by a rehabilitation hospital or a skilled nursing facility. Often, LTACs are embedded or located in an existing general acute care hospital, and may be completely transparent to the patient because "transfer" from the general acute care hospital involves little more than wheeling a patient from one floor of the general acute care hospital to the next floor of the same building where the LTAC operates. Prior to 2002, LTACs were reimbursed by the federal Medicare program based on their reasonable costs, but in 2002, the Medicare program began reimbursing LTACs using a prospective Diagnostic Related Group ('DRG") methodology. See, 67 Fed. Reg. 55,954 (August 30, 2002).

In 2003 and 2004, RHC opened two LTACs in northwest Arkansas operating out of Washington Regional Medical Center in Fayetteville, and Northwest Arkansas Regional Medical Center in Springdale. Not long after opening these facilities, RHC approached ABCBS about becoming an in-network provider for ABCBS and some of its affiliates who operate separate provider networks. ABCBS had in-network provider contracts with other LTACs operating in the state and offered RHC agreements similar to those agreements; however, RHC wanted a higher reimbursement rate than ABCBS was willing to offer and initially refused the agreements offered by ABCBS.

Eventually, in the spring of 2007, RHC entered into provider agreements with ABCBS for its Hospital Reimbursement Program network ("HRP") and some of the provider networks of

ABCBS affiliates. The eight claims at issue in this case, however, arose during the period between 2004 and 2007, when RHC was an out-of-network provider.

On the eight claims involved in this case, RHC asserts that ABCBS promised to pay RHC based on RHC's "usual, customary and reasonable" (or "UCR") charges. These claims are based on RHC's practice of calling ABCBS's customer service representatives requesting to "verify" insurance benefits. During these calls, despite being provided the information that was readily available, RHC's employees often would ask whether the available benefits were paid based on UCR charges.

As discussed below, reimbursement under insurance coverage issued by ABCBS or under health benefits plans for which ABCBS or BAAA act as claims administrator typically is limited to the "allowed amount" or "allowance" as determined by ABCBS or BAAA or the terms of the applicable health benefit plan. (The insurance policy or benefit plan also usually grants ABCBS, BAAA, or the plan administrator the discretion to determine the allowed amount or allowance.)

For out of network hospital claims, ABCBS or BAAA determines the allowance based on the amounts established by ABCBS under its Hospital Reimbursement Plan or "HRP." ABCBS establishes the HRP allowance for numerous types of medical treatment based on each patient's medical diagnosis or diagnoses, also known as a Diagnostic Related Group or "DRG." ABCBS originally established these DRG allowances based on a survey of the amounts hospitals in Arkansas historically charged for those services. The HRP established each DRG allowance at the level charged by 75% of the hospitals in Arkansas of similar size. ABCBS and its affiliates also use these HRP allowances to establish reimbursement rates for in-network providers – typically at some percentage less than the base HRP allowance.

With this background, the dispute in this case is about whether the proper amounts were paid under the insurance policies and health plans involved in this case, or whether RHC is entitled to some greater amount because RHC justifiably believed it would be reimbursed a different rate based on its usual, customary and reasonable charges. As discussed herein, ABCBS is entitled to dismissal of RHC's complaint or entry of judgment in its favor as a matter of law because (a) RHC's promissory estoppel claim is pre-empted by ERISA, (b) even if RHC had properly stated a claim for benefits under ERISA, the benefits at issue in this case were properly paid, and (c) even if RHC's promissory estoppel claim is not pre-empted by ERISA, RHC cannot as a matter of law demonstrate essential elements of a promissory estoppel claim.

I.

## RHC's CLAIMS ARE PRE-EMPTED BY ERISA

RHC alleges that each of the eight individuals involved in this case assigned their rights for health insurance or health benefits to RHC, and that as a result RHC has standing to assert those rights and bring this lawsuit. (Complaint, ¶29). Each of the claims originally submitted for payment by RHC indicates that it was submitted pursuant to an "assignment of benefits." (Charlesworth Aff., Ex. A-2 (box 53), Ex. B-2, Ex. C-2, Ex. D-2, Ex. E-2, Ex. F-2, Ex. G-2, and

Ex. H, p. 11). As a result, RHC's claims in this case are claims for benefits under employee welfare benefit plans and are subject to ERISA.[2]

Because RHC's claims are subject to ERISA, RHC's sole remedy is an action under ERISA's civil enforcement provision at 29 U.S.C. §1132, and RHC's state law claims for promissory estoppel are pre-empted. See, Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41 (1987); Fink v. Dakotacare, Inc., 324 F.3d 685 (8th Cir. 2003); Howard v. Coventry Health Care of Iowa, Inc., 293 F.3d 442 (8th Cir. 2002); Donatelli v. Home Ins. Co., 992 F.2d 763 (8th Cir. 1993); Ince v. Healthsource Arkansas, Inc., 977 F.Supp. 948 (E.D.Ark. 1997).

Because RHC's state law claims for promissory estoppel are pre-empted, RHC's Complaint must be dismissed, unless it also states a claim for relief under ERISA. RHC's Complaint fails to do so; for example, RHC fails to allege that it is an ERISA plan participant or beneficiary or that benefits are due under the terms of the insurance policies or benefit plans at issue in this case. See, 29 U.S.C. §1132(1)(B) (action under ERISA may be brought "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan or to clarify his rights to future benefits under the terms of the plan."). Indeed, RHC's Complaint contains no allegations as to the "terms" of any of the policies or plans in this case, which is an essential element of a claim for relief under section 1132 of ERISA.

Likewise, RHC's Complaint fails to allege exhaustion of administrative remedies under the terms of the policies and plan documents in this case. Because ERISA requires that

---

[2] The sole exception is RHC's claim for services provided to James Blatt. Mr. Blatt's health benefits were provided under the Arkansas Public School Employees Plan, for which ABCBS acted as claims administrator. (Charlesworth Aff. Ex. F-1). Because this plan is a "governmental plan," it is not subject to ERISA. 29 U.S.C. §1003(b)(1). Nevertheless, as explained herein, benefits were properly paid and RHC's complaint as to these benefits should be dismissed.

6

employee benefit plans provide for administrative review of claims denials, 29 U.S.C. §1133, exhaustion of such administrative remedies is an essential element of a claim for ERISA benefits. See, Norris v. Citibank N.A. Disability Plan, 308 F.3d 880 (8th Cir. 2002)(where exhaustion of administrative remedies is required under the terms of a plan, failure to exhaust administrative remedies requires dismissal); Kinkead v. Southwestern Bell Corp. Sickness and Accident Disability Benefit Plan, 111 F.3d 67 (8th Cir. 1997). Where a complaint for ERISA benefits does not allege that the administrative remedies available under ERISA have been exhausted, a cause of action under ERISA has not been stated and the complaint must be dismissed. See, Byrd v. MacPapers, Inc., 961 F.2d 157 (11th Cir. 1992); C.P. Motion, Inc. v. Aetna Life Ins. Co., 268 F.Supp.2d 1346 (S.D.Fla. 2003).

Here, RHC's Complaint does not allege a claim under ERISA because RHC does not assert a right to recovery of benefits under the terms of the policies or plans at issue in this case, nor does RHC seek to enforce the terms of the plans in this case. Likewise, RHC does not allege that the administrative remedies available under ERISA have been exhausted. Because RHC's state law claims, including its claim for promissory estoppel, are pre-empted by ERISA, and because RHC's Complaint fails to allege a claim for benefits under the terms of the ERISA plans in this case, RHC's Complaint must be dismissed for failure to state a claim under Fed.R.Civ.Proc. 12(b)(6).

II.

## ABCBS IS ENTITLED TO JUDGMENT AS A MATTER OF LAW BECAUSE THE BENEFITS DUE UNDER THE POLICIES AND PLANS IN THIS CASE WERE PROPERLY PAID

Even if RHC had properly stated a claim for benefits under ERISA, ABCBS is entitled to judgment as a matter of law because all the benefits that were due under each of the policies or plans in this case were properly paid. A copy of each insurance benefit certificate or summary plan description involved in this case, except for that of Betty Crum, is attached to the Affidavit of Victoria Charlesworth.[3] The four ABCBS benefit certificates providing coverage for Kay Hopkins, Kenneth Aman, Miles Langham and Peter Steinke provide that benefits for inpatient hospital charges will not exceed the allowed charge established by ABCBS. For example, the group policy under which Kay Hopkins was covered states:

> 3.2 **Hospital Services.** Subject to all terms, conditions, exclusions and limitations of the Plan set forth in this Benefit Certificate, including applicable Deductible and Coinsurance specified in the Schedule of Benefits, coverage is provided for the following Hospital Services. All Hospital services must be performed or prescribed by a Physician and provided by a Hospital.
>
> > 1. **Inpatient Hospital Services.** This benefit is subject to the following specific limitations:
> >
> > > a. Payment for Hospital charges for inpatient admissions shall be limited to the lesser of the billed charge or the Allowable Charge established by the Company.

(Charlesworth Aff., Ex. A-1, p. 10).

---

[3] Based on the information provided by RHC to ABCBS, Ms. Crum was never identified as being covered by any ABCBS health insurance policy or by any health benefit plan for which ABCBS or any of its affiliates acted as claims administrator.

> This certificate defines Allowable Charge, to wit:
>
> **Allowable Charge**, when used in connection with covered services or supplies delivered in Arkansas, will be the amount deemed by the Company, in its sole discretion, to be reasonable. The Arkansas Blue Cross and Blue Shield customary allowance is the basic Allowable Charge. . . .
>
> \* \* \* \* \*
>
> **Please note that all benefits under this Benefit Certificate are subject to and shall be paid only by reference to the Allowable Charge as determined at the discretion of Arkansas Blue Cross and Blue Shield. This means that regardless of how much your health care Provider may bill for a given service, the benefits under this Benefit Certificate will be limited by the Allowable Charge we establish. If you use an Arkansas Blue Cross and Blue Shield-participating Provider, that Provider is obligated to accept our established rate as payment in full, and should only bill you for your Deductible, Coinsurance and any non-covered services; however, if you use a non-participating Provider, you will be responsible for all amounts billed in excess of the Arkansas Blue Cross and Blue Shield Allowable Charge.**

(Charlesworth Aff., Ex. A-1, pp. 56-57).

Similar language is used in the benefit certificates covering Kenneth Aman (Charlesworth Aff., Ex. B-1, pp. 10, 57), Miles Langham (Charlesworth Aff., Ex. E-1, pp. 13, 7), and Peter Steinke (Charlesworth Aff., Ex. G-1, pp. 10-11, 60), as well as the Summary Plan Description covering James Blatt under the State of Arkansas Public School Employees Plan (Charlesworth Aff., Ex. F-1, pp. 3, 20).

Similar terms and conditions are also provided in the Summary Plan Descriptions covering Geri House and Gene Ada Baker. For example, the Central States Manufacturing, Inc. Summary Plan Description covering Geri House states:

> Medical benefits apply when Covered Charges are incurred by a Covered Person for care of an Injury or Sickness and while the person is covered for these benefits under the Plan

9

\* \* \* \* \*

**COVERED CHARGES**

Covered charges are the Usual and Reasonable Charges that are incurred for the following items of service and supply. Charges in excess of the Usual and Reasonable Charge guidelines of the Claims Administrator are not a covered expense. These charges are subject to the benefit limits, exclusions and other provisions of this Plan. . . .

(1) **Hospital Care.** The medical services and supplies furnished by a Hospital or Ambulatory Surgical Center or Birthing Center. Covered charges for room and board will be payable as shown in the Schedule of Benefits.

\* \* \* \* \*

**Usual and Reasonable Charge** is a charge which is not higher than the usual charge made by the provider of the care or supply and does not exceed the usual charge made by most providers of like service in the same area. This test will consider the nature and severity of the condition being treated. It will also consider medical complications or unusual circumstances that require more time, skill or experience.

The Plan will reimburse the actual charge billed if it is less than the Usual and Reasonable Charge.

The Plan Administrator has the discretionary authority to decide whether a charge is Usual and Reasonable.

(Charlesworth Aff., Ex. C-1, pp. 15, 29). Similar language is used in the Peterson Farms, Inc. Summary Plan Description that provides benefits for Gene Ada Baker (Charlesworth Aff., Ex. D-1, pp. 18, 33).

Furthermore, each of these Benefit Certificates or Summary Plan Descriptions grants discretionary authority to ABCBS, or to the Plan Administrator in the case of the self-funded plans providing benefits for Geri House, Gene Ada Baker, and James Blatt, to determine questions about benefits. For example, the Benefit Certificate for Kay Hopkins states:

10

> The Company acting on behalf of the Plan has authority and full discretion to determine all questions arising in connection with your benefits, including but not limited to eligibility, interpretation of Plan language and findings of fact with regard to such questions. The actions, determinations and interpretation of the Company acting on behalf of the Plan with respect to all such matters and with respect to any matter within the scope of its authority, shall be conclusive and binding on you and the Plan.

(Charlesworth Aff., Ex. A-1, p. 45). The Central States Manufacturing, Inc. Summary Plan Description states, for example:

> All benefits described in this Schedule are subject to the exclusions and limitations described more fully herein including, but not limited to, the Claims Administrator's determination that: . . . charges are Usual and Reasonable.
>
> * * * * *
>
> Benefits under this Plan shall be paid only if the Plan Administrator decides in its discretion that a Covered Person is entitled to them.

(Charlesworth Aff., Ex. C-1, pp. 11, 36).

Thus, under each of the ABCBS Benefit Certificates and the Summary Plan Descriptions of the self-insured plans in this case, either ABCBS, acting as claims administrator, or the plan administrator has the authority to determine what amount will be paid as hospital benefits, either as the "allowable charge" or the "covered charge" or the "usual and reasonable charge." Furthermore, both the ABCBS Benefit Certificates and the self-insured Summary Plan Descriptions grant discretionary authority to the claims administrator or the plan administrator to make those determinations.

The Affidavit of Peggy House submitted in support of ABCBS's Motion explains how the allowable charge was established under ABCBS's HRP for each of the claims in this case based on the pertinent DRG Code. Ms. House's Affidavit also explains how the HRP rates were originally developed based on a survey of charges by hospitals in

11

Arkansas for various services. The Explanation of Benefits forms and payments by ABCBS (Charlesworth Affidavit, Exs. A-3, B-3, E-3, F-3 and G-3) and by BAAA (Charlesworth Affidavit, Exs. C-3 and D-3) demonstrate how each of the claims in this case, except for claims relating to Betty Crum, were paid based on the ABCBS allowance and the deductibles and co-payments under each Benefit Certificate or Summary Plan Description. Because there is no dispute about how these allowances were calculated or that ABCBS or BAAA had the authority under the pertinent benefit certificates and plan documents to make these determinations, these claims decisions should not be disturbed by a reviewing court.

Where an ERISA plan grants discretionary authority, a court may not substitute its own judgment for that of the decision maker. Dillard's Inc. v. Liberty Life Assurance Co. of Boston, 456 F.3d 894, 899 (8th Cir. 2006). A plan administrator or claims administrator's decision can only be reversed if it is arbitrary and capricious. Id. If the decision is a reasonable one, i.e., if it is supported by the evidence, then the decision must be upheld. Schatz v. Mutual of Omaha Ins. Co., 220 F.3d 944, 949 (8th Cir. 2000); Cash v. Wal-Mart Group Health Plan, Inc., 107 F.3d 637, 641 (8th Cir. 1997). If a reasonable person could have reached the same decision based on the evidence in the record then the decision must be upheld. Pralutsky v. Metropolitan Life Ins. Co., 435 F.3d 833, 840 (8th Cir. 2006).

When a plan administrator's decision is supported by a reasonable explanation, it should not be overturned, even if a different reasonable decision could be reached. Cash v. Wal-Mart Group Health Plan, 107 F.3d 647, 641 (8th Cir. 1997). A decision is reasonable if a reasonable person could have reached the same decision. Donaho v. FMC Corp., 74 F3d 894, 897 (8th Cir. 1996). See also, Schatz v. Mutual of Omaha Ins. Co., 220 F.3d 944, 949 (8th Cir. 2000).

In this case, the decisions made by ABCBS and BAAA[4] as to the amount of benefits payable for RHC's services for each of these claims was reasonable. As explained in Peggy House's Affidavit, information was taken from the claim forms submitted by RHC to determine an appropriate DRG code, and the length of stay as reported by RHC was then used to calculate the allowance amount based on the rate for each DRG Code under ABCBS's HRP. These rates are based on historical charges by hospitals in Arkansas and are utilized to establish reimbursement amounts for both in-network and out of network hospitals. The decisions by ABCBS and BAAA in this case about the reimbursement amounts for the claims submitted by RHC were in accordance with the various Benefit Certificates or Summary Plan Descriptions involved in this case. These decisions were reasonable and were based on a consistent and rational methodology for determining hospital reimbursement rates. When an ERISA plan administrator (or, as in the case of BAAA herein, its agent) offers a reasonable explanation, supported by substantial evidence, the administrator's decision should not be disturbed on review. Jackson v. Prudential Ins. Co. of America, 530 F.3d 696 (8th Cir. 2008). Because the decisions by ABCBS and BAAA in this case were not arbitrary and capricious, and were supported by substantial evidence pursuant to a reasonable explanation, RHC (or the individual claimants) would not be entitled to relief under ERISA as a matter of law, even if RHC had properly pleaded an ERISA claim.

---

[4] It should be noted that BAAA is not the Plan Administrator and fiduciary of the self-funded plans for which it provides third-party administration services but merely acts as claims administrator, a non-fiduciary role, with final authority over payment or denial of any claim for Plan benefits reserved to the respective self-funded benefit plan's discretion; however, the distinction should not matter in this instance because BAAA acted on behalf of the Plan to set the allowance in the first instance and, as noted above, RHC did not exhaust administrative remedies available under the respective self-funded plans to challenge those decisions.

III.

## EVEN IF RHC'S PROMISSORY ESTOPPEL CLAIM WAS NOT PRE-EMPTED BY ERISA, RHC IS NOT ENTITLED TO RELIEF BECAUSE RHC CANNOT SATISFY ESSENTIAL ELEMENTS OF A CLAIM FOR PROMISSORY ESTOPPEL

In its complaint, RHC asserts that it is entitled to relief based on a claim of promissory estoppel. This claim is pre-empted by ERISA as to the ERISA plans involved in this case; however, even if ERISA did not pre-empt this cause of action, RHC cannot recover on this claim as a matter of law.

Under Arkansas law, the elements of promissory estoppel are:

(1) The defendant made a promise to the plaintiff;

(2) The defendant should reasonably have expected for the plaintiff to act in reliance on the promise or refrain from acting in reliance on the promise;

(3) The plaintiff acted or refrained from acting in reasonable reliance upon the promise at his or her detriment; and

(4) Injustice can only be avoided by enforcement of the promise.

Charles Brooks Co. v. Georgia Pacific Corp., 2007 WL 1175051 (W.D.Ark. 2007) (quoting Van Dyke v. Glover, 326 Ark. 736, 934 S.W.2d 204 (1996)). Furthermore, promissory estoppel cannot be used to engraft a promise on a contract that differs from the written terms of the contract; thus, promissory estoppel cannot be asserted when a formal contract exists. Taylor v. George, 92 Ark. App. 264, 212 S.W.3d 17 (2000). See also, Heating and Air Specialists, Inc. v. Jones, 180 F.3d 923 (8th Cir. 1999) (under Arkansas law promissory estoppel may not be used to determine the parties' rights under an otherwise enforceable contract).

Based on this black letter law, RHC cannot recover on its promissory estoppel claim as a matter of law. First, it is not disputed that an enforceable contract exists as to each of the claims

involved in this case. It also is not disputed that RHC's claim is premised on the contracts at issue, i.e., the ABCBS Benefit Certificates and the self-funded Summary Plan Descriptions. It also is undisputed that RHC asserts its rights in this case as assignee of the benefits available under these contracts. Because enforceable contracts exist as to each of the claims asserted by RHC, RHC cannot change the terms of those contracts through an allegation of promissory estoppel based on phone calls made for the purpose of "verifying" insurance benefits. Because enforceable contracts exist in this case that RHC seeks to enforce, RHC cannot bring a promissory estoppel claim as a matter of law.

Second, a claim for promissory estoppel requires a promise from ABCBS to RHC. Here there was no promise. RHC does not allege any such promise in its Complaint, and in fact states that "BLUE CROSS, through its agents, verified that the individuals were covered under plans issued or administered by BLUE CROSS and provided the amount of health insurance benefits that were available to each patient." (Complaint, ¶15). Moreover, as the deposition of Mike McLean, RHC's Chief Executive Officer and Administrator, demonstrates, the purpose of RHC's phone calls to ABCBS was to "verify" that each of the patients in this case had insurance – not to obtain a promise of payment from ABCBS. (McLean depo., pp. 50-55). Since ABCBS made no promise to RHC, RHC cannot satisfy this essential element of its claim for promissory estoppel.

Third, promissory estoppel requires reasonable reliance by RHC on the alleged promise to RHC's detriment. RHC appears to allege that ABCBS promised to pay benefits based on usual, customary and reasonable charges, and that it relied on this alleged promise by admitting these patients to its hospital. However, the testimony of Mike McLean demonstrates that RHC did not rely to its detriment on any such promise. Instead, Mr. McLean testified that because the

RHC hospital was new, he was trying to fill RHC's hospital beds with patients in order to obtain whatever revenue he could. In fact, as Mr. McLean testified, the only financial criteria for RHC to decide whether to admit a patient was "whether the insured had benefits." (McLean Depo., p. 55). Consequently, RHC's interest was limited to verifying that these patients had some – indeed, any -- insurance coverage. Since RHC wanted these patients regardless of the amount of reimbursement under their insurance coverage, there was no detrimental reliance by RHC simply because these claims were not reimbursed based on the amount that RHC actually billed for its services.

Finally, ABCBS is entitled to judgment as a matter of law because no reasonable trier of fact could find that RHC's reliance was reasonable in this case. RHC is a sophisticated company with several LTAC hospitals located around the country. Its management was well aware of the 2002 federal Medicare regulation that changed LTAC reimbursement to a DRG-based methodology, and that changes in Medicare reimbursement typically are followed by private insurers. (Jones Depo, pp. 24 - 27). As explained by the affidavit of Warren McDonald, RHC and ABCBS attempted to negotiate DRG-based provider agreements in 2004 and 2005, before the claims involved in this case even arose. In addition, as RHC began filing claims and making assertions that ABCBS had promised to pay benefits based on RHC's UCR charges, ABCBS through its written responses to RHC's appeals and requests for claims status updates put RHC directly on notice that ABCBS did not reimburse based on RHC's UCR charges. In addition, Mr. McDonald's office took additional steps to ensure that RHC was on written notice as to the method by which ABCBS determined reimbursements by sending statements to RHC containing the following notice:

> Regardless of what your charges may be you will not be paid unless the Member contract or health plan allows payment to you, and the amount you will be paid is governed by the terms of the Member's contract or health plan. . . . [Y]ou are hereby placed on written notice that no health plan or contract administered by us will pay your full or "billed" charges; rather all such health plans or contracts pay based on their own reimbursement formulas, which, in every case, are determined by the terms of the health plan or contract, and are subject to the discretion of the claims administrator, who sets the precise "allowance" or other reimbursement rate for each contract or health plan covering a Member.

(McDonald Affidavit, Ex. A).

Based on these facts, no reasonable trier of fact could conclude that a sophisticated hospital company like RHC would reasonably rely on an alleged oral statement by an ABCBS customer service representative that RHC would be paid based on RHC's UCR charges. Compare, Bennett v. Kohler, 2006 WL 2583660 (E.D.Ark. 2006) (based on the parties' sophistication and the facts in the case summary judgment was appropriate because no reasonable jury could find that the plaintiff's reliance was reasonable.). Since RHC cannot prove essential elements of a claim for promissory estoppel, its complaint must be dismissed as a matter of law.

## CONCLUSION

ABCBS is entitled to dismissal of RHC's Complaint. RHC's state law causes of action as to seven of the claims in its Complaint are pre-empted by ERISA, and RHC's Complaint does not allege a claim for relief under ERISA. Even if RHC's Complaint did adequately state a cause of action under ERISA, ABCBS is entitled to judgment because all of the claims, except for Betty Crum, were properly paid according to the terms and conditions of the insurance

policies and plan documents. Finally, ABCBS is entitled to judgment as a matter of law, because RHC cannot prove essential elements of its claim for promissory estoppel. RHC's Complaint should be dismissed and judgment entered in favor of ABCBS.

> ARKANSAS BLUE CROSS AND BLUE SHIELD,
> A Mutual Insurance Company,
> Defendant
>
> By Its Attorneys:
>
> Allan W. Horne
> Mark H. Allison
>
> DOVER DIXON HORNE PLLC
> Suite 3700, 425 West Capitol Avenue
> Little Rock, AR 72201
> Ph: (501) 375-9151
> Fax: (501) 375-6484
> mallison@ddh-ar.com
>
>
> By: _____
>      Mark H. Allison
>      Arkansas Bar No. 85001

## CERTIFICATE OF SERVICE

I hereby certify that on September 11, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which shall send notification of such filing to the following:

Tim Cullen
CULLEN & CO., PLLC
P.O. Box 3255
Little Rock, Arkansas 72203

and, further, that a copy of the foregoing has been served upon Ronald Hennings, LAW OFFICE OF RONALD J. HENNINGS, P.C., 3755 East Main Street, Suite 175, St. Charles, IL 60174, by placing a copy in the United States mail addressed to such attorney with sufficient prepaid postage, this 11th day of September, 2009.

_____
Mark H. Allison