**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

**REGENCY HOSPITAL COMPANY OF**                            **PLAINTIFF**
**NORTHWEST ARKANSAS, LLC.**

**v.**                      **CASE NO. 4:08-CV-04177 GTE**

**ARKANSAS BLUE CROSS BLUE SHIELD**                      **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

Defendant Arkansas Blue Cross Blue Shield ("ABCBS") has filed a motion to dismiss or, in the alternative, motion for summary judgment.[1] Plaintiff Regency Hospital Company of Northwest Arkansas, LLC ("Regency") has responded.[2] ABCBS has also filed a reply.[3] For the reasons explained below, the Court concludes that ABCBS' motion should be granted on the terms and to the extent stated herein.

**I.     BACKGROUND**

On November 3, 2008, Regency filed its Complaint against Blue Cross in Pulaski County Circuit Court. On November 24, 2008, Blue Cross removed the action to federal district court, alleging federal question jurisdiction based upon the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq., commonly called "ERISA."

Plaintiff Regency operates a long term acute care hospital ("LTAC") in Springdale, Arkansas. Defendant ABCBS is a mutual reserve company that provides health insurance to

---

[1] Docket entry # 11.

[2] Docket entry # 18.

[3] Docket entry # 21.

individuals who enroll in one of its plans and pay premiums.  ABCBS, through an affiliate, also acts as a third party administrator for certain health plans.

Regency claims in this lawsuit that it provided medical services to eight different patients, prior to which it contacted ABCBS "to verify the health insurance benefits available to each individual patient." (Complaint at ¶ 14).  In each case, Regency contends, ABCBS, "through its agents, verified that the individuals were covered under plans issued or administered by ABCBS and provided the amount of health insurance benefits then available to each patient." (Complaint at ¶ 15).  Regency claims that it admitted each patient and provided treatment based on the representations made by ABCBS agents. It further claims that the difference between what ABCBS promised to pay and what it actually paid was $730,993.30.  Regency alleges that ABCBS "acted in a manner contrary to representations its agents made to Regency" by "failing to process the claim according to the quoted benefits." (Complaint at ¶ 25).  Regency claims that it has been damaged in the amount of $730,993.30 as a result of ABCBS' misrepresentations and that ABCBS is estopped to act in a manner contrary to the statements of its agents who confirmed insurance coverage.

## II.     LEGAL STANDARD

Defendant claims that it is entitled to dismissal based on Fed. R. Civ. P. 12(b)(6) or to summary judgment based on Fed. R. Civ. P. 56.  Both standards are relevant.

### A.     Dismissal for failure to state a claim - Fed. R. Civ. P. 12(b)(6)

In ruling on a Rule 12(b)(6) motion to dismiss, the court "accept[s] as true all of the factual allegations contained in the complaint, and review[s] the complaint to determine whether its allegations show that the pleader is entitled to relief." *Schaaf v. Residential Funding Corp.,* 517 F.3d 544, 549 (8th Cir.2008). All reasonable inferences from the complaint must be drawn in

favor of the nonmoving party. *Crumpley-Patterson v. Trinity Lutheran Hosp.,* 388 F.3d 588, 590 (8th Cir.2004). A motion to dismiss should not be granted merely because the complaint "does not state with precision all elements that give rise to a legal basis for recovery." *Schmedding v. Tnemec Co.,* 187 F.3d 862, 864 (8th Cir.1999). A complaint need only contain " 'a short and plain statement of the claim showing that the pleader is entitled to relief.' " *Id.* (quoting Fed.R.Civ.P. 8(a)). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 563 (2007) (overruling language from *Conley v. Gibson,* 355 U.S. 41, 45-46, (1957), which stated, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (citations omitted).

    **B.**    **Judgment as a mater of law - Fed. R. Civ. P. 56**

Summary judgment is appropriate only when, in reviewing the evidence in the light most favorable to the non-moving party, there is no genuine issue as to any material fact, so that the dispute may be decided solely on legal grounds. *Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed. R. Civ. P. 56. The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial-- whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The Eighth Circuit set out the burdens of the parties in connection with a summary judgment motion in *Counts v. M.K. Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> [T]he burden on the party moving for summary judgment is only to demonstrate, i.e., "[to] point[] out to the District Court,'" that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.

*Id.* at 1339 (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-74 (8th Cir. 1988) (citations omitted)(brackets in original)).

"A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). However, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Id.*

Once the moving party demonstrates that the record does not disclose a genuine dispute on a material fact, the non-moving party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. Rule 56(e). The plain language of Rule 56(c) mandates the entry of summary judgment against a non-moving party which, after adequate time for discovery, fails to make a showing sufficient to establish the existence of an element essential to its case, and on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 322.

### III.     FACTS WITHOUT MATERIAL CONTROVERSY

Described as a "long-term acute care hospital" or "LTAC," Regency is a special type of hospital which provides medical services to patients who no longer need the services of a general acute care hospital, but who continue to need medical services that cannot be provided by a rehabilitation hospital or a skilled nursing facility.

In 2003 and 2004, Regency opened two LTAC hospitals in Northwest Arkansas, one operating out of Washington Regional Medical Center in Fayetteville, and the other out of Northwest Arkansas Regional Medical Center in Springdale.  Not long after opening these facilities, Regency approached ABCBS about becoming an in-network provider for ABCBS and some of its affiliates.

The parties could not come to an agreement on an appropriate reimbursement rate and Regency remained an out-of-network provider.  As an out-of-network provider, Regency received reimbursement for its services from ABCBS at a higher rate than ABCBS's in-network providers.  While in-network providers agreed not to bill patients more than the allowed reimbursement amount, Regency was not so limited.

At some point in 2007, Regency joined ABCBS' network of providers.  All of the allegedly underpaid claims in this case, however, arose during the period between 2004 and 2007, when Regency was still an out-of-network provider.

During this period, Regency provided medical services to the following eight patients: Kay Hopkins, Kenneth Aman, Geri House, Gene Ada Baker, Miles Langham, James Blatt, Peter Steinke, and Betty Crum.  Regency's claims are based on the medical services it provided to these eight patients.  All of these patients, with the exception of Betty Crum, were covered under insurance policies or benefit certificates issued by ABCBS or under self-funded employee benefit

plans for which ABCBS or its affiliate Blue Advantage Administrators of Arkansas ("BAAA") acted as claims administrator.

While Regency contends that Betty Crum was also covered under a plan issued or administered by ABCBS under a plan known as TrueBlue, it has failed to present any evidence to counter ABCBS's proof that neither it nor its affiliates provided coverage or services for Ms. Crum. Regency's claim against ABCBS arising from any medical services provided to Ms. Crum must therefore be dismissed.

The remaining seven patients had valid and enforceable contracts that provided health insurance coverage or health benefits for payment of Regency's services. Each of these patients' plans gave ABCBS or its affiliate BAAA discretionary authority to determine questions about plan benefits. ABCBS acknowledges that one of these seven patients, James Blatt, received health benefits under a plan which is not governed by ERISA.[4] It is undisputed that the six remaining patients received health care benefits under employee welfare benefit plans subject to ERISA.

Regency obtained an assignment of benefits from each of the eight patients involved in this case. Regency previously filed claims with ABCBS or BAAA as to all of these patients which were rejected under the terms of the benefit plans.[5]

---

[4] Mr. Blatt's health benefits were provided under the Arkansas Public School Employees Plan, which is considered a "government plan" to which ERISA does not apply. 29 U.S.C. § 1003(b)(1). The Court will address Regency's promissory estoppel claim relating to services provided to Mr. Blatt on the merits.

[5] ABCBS has submitted copies of the documents relating to all seven claims in support of its motion. See Affidavit of Victoria Charlesworth, Exhibits A thru G, docket entry # 15.

**IV.    DISCUSSION**

**A.    Subject matter jurisdiction - Complete Preemption**

ABCBS removed this action asserting federal question jurisdiction even though RHC's Complaint alleges only a state law cause of action for promissory estoppel.  For cause, ABCBS contends that RHC's state law claims are completely preempted by federal law. Normally, federal pre-emption asserted in defense to a plaintiff's state law claim does not authorize removal to federal court based on federal question jurisdiction.  However, the Supreme Court has recognized an exception to the "well-pleaded complaint rule" for those cases in which "Congress [has] so completely pre-empt[ed] a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64, 107 S.Ct. 1542, 1546 (1987).  ERISA, in some instances, is such a law.  *See id.* at 63-67, 107 S.Ct. at 1546-48.  The Court will therefore address this question first.

Removal to federal court notwithstanding the absence of a federal question in the complaint is allowed in cases falling within 29 U.S.C. § 1132(a)(1)(B)[6] of ERISA on the theory that Congress intended federal law to occupy the regulated field of pension contract enforcement. Thus, state law claims "for damages or injunctive relief to enforce a pension [or welfare] plan against an employer or trustee are subject to removal." *Preferred RX. Inc. v. American Prescription Plan*, 46 F.3d 535 (8th Cir. 1995).  State law causes of action not covered by § 1132(a)(1)(B) may still be subject to a defensive preemption claim under § 1144(a) because the state law at issue may "relate to" a pension or employee benefit.  *Id.*

---

[6] Section 1132(a)(1)(B) provides that "a civil action may be brought by a participant or beneficiary to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

- 7 -

The doctrine of complete or implied preemption under 29 U.S.C. § 1132, which is the determining factor for addressing the removal jurisdiction issue, must be distinguished from express preemption under 29 U.S.C. § 1144(a).[7]  The two concepts are separate and distinct.[8]  Only the former permits a defendant to remove a complaint alleging state law claims to federal court as an exception to the well-pleaded complaint rule.  "State causes of action not covered by § 1132(a)(1)(B) may still be subject to a pre-emption claim under § 1144(a) because the state law at issue may "relate to" a pension or employee benefit plan" although such actions would not be removable.  *Id*.

Thus, the Court must determine whether any of the eight separate causes of action alleged in Plaintiffs' Complaint are completely preempted under § 1132(a)(1)(B).[9]  If so, then this action was properly removed.  If not, the Court will be required to remand the action for lack of subject matter jurisdiction.

Regency denies that its claims are completely preempted by ERISA.  It relies on two cases, *Arkansas Blue Cross and Blue Shield v. St. Mary's Hospital*, 947 F.2d 1341 (8th Cir. 1992) and *In Home Health, Inc. v. Prudential Ins. Co. of America*, 101 F.3d 600 (8th Cir. 1997). ABCBS argues both cases concerned "express" preemption under § 514 of ERISA, 29 U.S.C. §

---

[7] Section 1144(a) provides that "the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan. . ."

[8] The use of preemption based upon these separate statutory provisions and theories has led to much confusion in the area of ERISA preemption.  No less than eighteen opinions dealing with ERISA preemption have been issued by the Supreme Court, leading Justice Scalia to comment in 1997 that the Court's continued involvement in the issue suggests "that our prior decisions have not succeeded in bringing clarity to the law." *Cal. Div. of Labor Standards Enforcement v. Dillingham Constr., Inc.*, 519 U.S. 316, 335 (1997) (Scalia, J., concurring).

[9] It is not necessary to find that each and every claim asserted by Plaintiff is completely preempted for the Court to have federal question subject matter jurisdiction.  If any of Plaintiff's claims is completely preempted, the entire case was removable.  *See* 28 U.S.C. § 1441(c).

- 8 -

1144, while "complete" preemption must be assessed under § 502 of ERISA, 29 U.S.C. § 1132. ABCBS is correct. As the Court has already described, the concepts are separate and distinct. Only complete preemption provides the Court with federal question jurisdiction.

The Supreme Court addressed the requirements for complete preemption in *Aetna Health, Inc. v. Davila*, 542 U.S. 200, 213 (2004), stating that "any state-law cause of action that duplicates, supplements or supplants the ERISA civil enforcement remedy [ERISA § 502, 29 U.S.C. § 1132(a)] conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore [completely] preempted.

ERISA § 502(a)(1)(B) provides:

> A civil action may be brought - - (1) by a participant or beneficiary - - . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

29 U.S.C. § 1132(a)(1)(B).

As the Court explained in *Davila*:

> This provision is relatively straightforward. If a participant or beneficiary believes that benefits promised to him under the terms of the plan are not provided, he can bring suit seeking provision of those benefits. A participant or beneficiary can also bring suit generically to "enforce his rights" under the plan, or to clarify any of his rights to future benefits. . . .
>
> It follows that if an individual brings suit complaining of a denial of coverage for medical care, where the individual is entitled to such coverage only because of the terms of an ERISA-regulated employee benefit plan, and where no legal duty (state or federal) independent of ERISA or the plan terms is violated, then the suit falls "within the scope of" ERISA § 502(a)(1)(B). *Metropolitan Life, supra,* at 66, 107 S.Ct. 1542. In other words, if an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B).

*Davila*, 542 at 210.

Regency argues that its claims are an effort to recover damages "for its detrimental reliance upon the words and actions of the Defendants, not recovery based on the language in the various insurance plans that covered the patients." (Plaintiff's response, docket # 18 at 7). It argues that the "individual plans between the patient and their employers are not germane to this case, and any reliance on those plans by Defendant is merely a smoke screen to hide the real issue in the case." *Id*. at 8.

The Court rejects this argument. Regency and ABCBS did not have a provider agreement or any other direct contractual relationship.

ABCBS's obligation was to provide benefits according to the terms of the plans at issue. Regency's argument is that ABCBS made oral promises about the benefits that were available that were not true. That does not mean that the plans have no relevance. To the contrary, just as in *Davila*, it will be necessary to interpret the requirements of the plans – the written contract establishing the terms and amount that ABCBS would pay for medical services – and to assess those requirements in connection with any contrary promises.

Further, Regency took an assignment of plan benefits from the eight patients in question prior to filing this action. Because it is the assignee of the plan benefits, any defenses ABCBS has against its plan participants or beneficiaries can be asserted against Regency. The Court agrees with ABCBS that the threshold issue is what benefits were available to Regency's patients as beneficiaries under their respective plans. As the Supreme Court stated in *Davila*, "distinguishing between pre-empted and nonpre-empted claims based on the particular label affixed to them would 'elavate form over substance and allow parties to evade' the pre-emptive

scope of ERISA simply 'by relabeling their contract claims as claims for tortious breach of contract." *Davila*, *supra*, 542 U.S. at 214 (omitting citation).

The Court holds that Regency's claims for additional payment for health services provided to the six patients with ERISA plans are completely preempted. See also *Regency Hospital Company of South Atlanta v. United Healthcare of Georgia*, 403 F.Supp.2d 1221 (N.D. Ga. 2005) (holding that because Regency took an assignment of benefits from its patient, its state law claims of breach of contract and negligent misrepresentation were completely preempted under ERISA).

Federal subject matter jurisdiction is therefore appropriate.

**B.     Remedy for Completely Preempted Claims**

Regency's Complaint makes no effort to state a claim for relief under ERISA. While ABCBS argues that the claims were properly rejected under the terms of each Plan, the Court finds that it is premature to address this issue. No federal claim under ERISA has been alleged. "[T]he prevailing practice is to grant a party whose state-law claims have been removed on the basis of complete preemption leave to file an amended complaint, recasting those claims (which, despite their state-law language, are federal claims) in the language of ERISA." *Erbaugh v. Anthem Blue Cross and Blue Shield*, 126 F.Supp.2d 1079, 1082 (citing *Fallick v. Nationwide Mut. Ins. Co.*, 162 f.3d 410, 411 (6th Cir. 1998)).

The Court will therefore grant Plaintiffs leave to amend their complaint to file an Amended Complaint that recasts their causes of action under ERISA, assuming there is a good-faith basis for doing so.

### C. Estoppel under Federal Common Law

While it may be premature to address it, the Court tentatively rejects Regency's contention that its claims should be considered as claims for equitable estoppel under federal common law. In the Eighth Circuit, equitable estoppel may not be used to vary or contradict the language of an ERISA plan or to enlarge the benefits available under the plan. *Slice v. Sons of Norway*, 34 F.3d 640 (8th Cir. 1994); *Algren v. Pirelli Armstrong Tire Corp.*, 197 F.3d 915 (8th Cir. 1999). Nor may it be used to as a basis for the recovery of money damages. *Jensen v. SIPCO, Inc.*, 38 F.3d 945 (8th Cir. 1994) (equitable estoppel may not be used to recover damages for reliance on an alleged promise).

### D. Promissory Estoppel Claim

The Court will consider Regency's promissory estoppel claim solely as it relates to the claim for additional payment related to James Blatt. The Court concludes that this claim fails as a matter of law.[10]

To prevail on its promissory estoppel claim under Arkansas law, Regency has the burden to prove:

(1) That ABCBS made a promise to Regency;

(2) That ABCBS should reasonably have expected for Regency to act in reliance on the promise or refrain from acting in reliance on the promise;

(3) That Regency acted (or refrained from acting in reasonable reliance) upon the promise to its detriment; and

---

[10] The Court rejects Regency's effort, in its response brief, to shift its theory of relief from one for promissory estoppel to one for misrepresentation. Regency's Complaint does not state a cause of action for misrepresentation and Regency never sought to amend its Complaint. See also Fed. R. Civ. P. 9(b) (fraud must be pled with particularity).

(4) Injustice can only be avoided by enforcement of the promise.

*Charles Brooks Co. v. Georgia Pacific Corp.*, 2007 WL 1175051 (W.D. Ark. 2007) (citing *Van Dyke v. Glover*, 326 Ark. 736, 934 S.W.2d 204 (1996)).

Promissory estoppel is an alternative basis for recovery when formal contractual elements do not exist. *Superior Fed. Bank v. Mackey*, 84 Ark.App. 1, 27, 129 S.W.3d 324, 341 (2003). It is not intended "to be used as a vehicle to engraft a promise on a contract that differs from the written terms of the contract." *Moore v. Keith Smith Co., Inc.*, 2009 WL 1232094 (Ark. App. 2009). Nor is the doctrine to be applied "in order to determine the parties' rights under a contract that is otherwise enforceable." *Heating & Air Specialists, Inc. v. Jones*, 180 F.3d 923, 934 (8th Cir. 1999).

ABCBS has provided detailed information regarding this issue. Victoria Charlesworth, the Appeals Coordinator for ABCBS has submitted an affidavit providing copies of the following documents relating to the claims for James Blatt: (a) the Summary Plan Description for Arkansas Public School Employees; (b) the claim form or forms submitted by Regency; (c) the Explanation of Benefits prepared by ABCBS, as claims administrator, and (d) correspondence between Regency and ABCBS relating to inquiries about or appeals of the claim payments.[11] None of this documentation is disputed by Regency.

These documents indicate that James Blatt was a patient at Regency's facility from September 13th through September 25th of 2006. On September 14, 2006, Regency wrote ABCBS to advise that it had obtained "an ERISA-complaint assignment of benefits related to current and future treatments rendered or to be rendered to the above-referenced patient." It further advised that it had received Mr. Blatt's power of attorney pursuant to which it was

---

[11] See Exhibit F to Affidavit of Victoria Charlesworth, Docket entry # 15.

"authorized to obtain pre-certification for health care services, submit claims, receive payments, receive information from the health care plan or its Administrator and/or Plan Fiduciary, to exercise appeal rights, file appropriate legal action, communicate with, and negotiate settlements with the Plan and its Administrator and/or Fiduciary."

ABCBS has presented copies of the claim for additional payment that Regency submitted. By letter dated November 27, 2006, Regency submitted to ABCBS an appeal of ABCBS's adverse benefit determination with regard to medical services provided by Regency to Mr. Blatt between September 13 and September 25, 2006. The letter states that Mr. Blatt "has designated and appointed RHC [Regency] as its authorized representative to submit the claim receive documentation and information, and to appeal an adverse benefit determination on the Claimant's behalf." See Exhibit F-4 (Blatt) to Affidavit of Victoria Charlesworth, Docket entry # 15-7, at 93.

Nowhere in Regency's written communications with ABCBS does Regency refer to a promise to pay a certain level of benefits. In all of these communications, it appears clear that the dispute is over what claims are due and payable under Mr. Blatt's particular plan. In a communication dated October 19, 2006, ABCBS advises:

> . . . Furthermore, please be advised that the level of benefits available for your services to the Member [Mr. Blatt] is subject to the terms of the Member's insurance contract or health benefit plan. Regardless of what your charges may be <u>you will not be paid unless the Member contract or health plan allows payment to you, and the amount you will be paid is governed by the terms of the Member's contract or health plan. While the terms of contracts or health plans administered by us may vary, you are hereby placed on written notice that no health plan or contract administered by us will pay your full or "billed" charges; rather, all such health plans or contracts pay based on their own reimbursement formulas, which, in every case, are determined by the terms of the health plan or contract, and are subject to the discretion of the claims administrator, who set the precise</u>

> "allowance" or other reimbursement rate for each contract or health plan covering a Member.

(Exhibit F-4 to Charlesworth Affidavit, docket entry # 15-7, p. 91 of 101) (emphasis in original).

Regency's agents in this formula do not refer to any oral representation that ABCBS would reimburse a particular amount or use a given rate or formula. And, ABCBS repeatedly advises that the health benefit plan or contract is the controlling document.

Regency, having failed to obtain satisfactory payment or to negotiate a settlement under the terms of Mr. Blatt's health care plan, filed this legal action to pursue a promissory estoppel claim. The claim is based on a vague "promise" regarding payment which was allegedly made by an unidentified ABCBS agent when Regency called to confirm benefits prior to admitting Mr. Blatt to its facility. Regency now seeks to ignore the contract and rely instead on promissory estoppel principles.

ABCBS argues that Regency has failed to adequately plead the alleged promise that gives rise to its promissory estoppel claim. The Court agrees. Further, assuming the claim was adequately pled, Regency has failed to present facts to support its claim that ABCBS made a promise sufficient to give rise to an implied contract. Regency's Complaint does not identify the alleged "promise" sufficiently to enforce it. It simply alleges that ABCBS "verified that the individuals were covered under plans issued or administered" by ABCBS and also "provided the amount of health insurance benefits that were available to each patient." (Amended Complaint at ¶ 15). Regency further alleges that ABCBS "confirmed health insurance benefit information over the phone." (Amended Complaint at ¶ 19).

The Complaint does not identify who said what to whom. The Court holds as a matter of law that the alleged promise is too vague to be enforceable. Additionally, when the promise is

- 15 -

considered on summary judgment, there is no material question of fact before the Court.[12]
ABCBS has presented evidence to demonstrate that it did not make a promise to Regency regarding the amount of benefits to be paid. ABCBS offers the deposition testimony of Mike McLean, Regency's Chief Executive Officer and Administrator. Mr. McLean testified that the purpose of Regency's phone calls to ABCBS was to "verify" that each of the eight patients had insurance – not to obtain a promise of payment from ABCBS. (McClean depo., pp. 50-55). Regency makes no effort to explain this admission by its own CEO.

In conclusion, Regency has failed to present any evidence to support a factual finding that ABCBS made a legally enforceable promise to Regency.

Promissory estoppel also requires as an essential element that any reliance by Regency on an alleged promise must be reasonable. Victoria Charlesworth has submitted a supplemental affidavit demonstrating that ABCBS had, on different occasions in May and June of 2005, advised Regency's corporate office in Georgia in writing that claims would not be paid based upon the billed charge. One such letter states in part: "Claims are never paid based upon the billed charge but, based upon the Charge (allowance) established by Arkansas Blue Cross and Blue Shield. I would be surprised to find that any insurer pays you based upon the billed charge for a service." (Letter to Regency's Director of Contracting dated June 2, 2005, attached to Victoria Charlesworth's Supplemental Affidavit, docket entry # 24).

---

[12] Regency in its Supplemental Statement of Facts has made broad allegations of fact, but has failed to provide affidavit or other admissible testimony to permit a finding that such statements were in fact made and to identify the person who made them. For example, Regency alleges at ¶ 8 of its statement: "In each phone conversation, Arkansas Blue Cross stated that it would pay according to the usual and customary rates, and never mentioned that payment was based on DRGs." Docket entry # 19.

Another letter further advised:

> Please be advised that no agent or employee of the Company can change any of the benefits available to the member under his particular policy language. A change of amendment to the member's benefits must be made in writing and signed by an Officer of the Company.

(Letter dated May 24, 2005, attached to Charlesworth's Supplemental Affidavit).

"Whether a party's reliance is reasonable is ordinarily a fact question for the jury unless the record reflects a complete failure of proof." *City of Geneseo v. Utilities Plus*, 533 F.3d 608, 617 (8th Cir. 2008) (applying Minnesota law) (citing *Hoyt Props., Inc. v. Prod. Res. Group, L.L.C.*, 736 N.W.2d 313, 321 (Minn. 2007)).

In this case, Regency has completely failed to demonstrate that its reliance on the alleged promise was reasonable. The Court holds as a matter of law that Regency could not have reasonably relied on a promise allegedly made by the unnamed agent(s) of ABCBS that ABCBS would reimburse Regency by paying its billed charge (or a percentage thereof) for all services to be rendered to Mr. Blatt. There is no evidence that such agent(s) had the authority to bind ABCBS. See *Nicollet Restoration, Inc. v. City of St. Paul*, 533 N.W.2d 845, 848 (Minn. 1995) (holding plaintiff could not reasonably rely on promises made during negotiations with the mayor and other governmental official because neither had authority to bind the city).

The parties have not cited and the Court has not found an Arkansas case discussing the requirement that enforcement of the promise must be necessary to avoid injustice. Were the Arkansas Supreme Court to consider the issue, this Court predicts it would agree with other states which hold that the injustice factor is a question of law for the court. *City of Geneseo v. Utilities Plus*, 533 F.3d at 617 (8th Cir. 2008). The Court further holds as a matter of law, based

on the undisputed facts before it, that it would be unjust to enforce the alleged promise (assuming it was definite enough to enforce).

For all of these reasons, the Court concludes that Regency has failed to come forward with evidence sufficient to permit a finding in its favor on its claim for promissory estoppel seeking additional payment for the medical services provided to Mr. Blatt.

### V.     CONCLUSION

IT IS THEREFORE ORDERED THAT Defendant Arkansas Blue Cross Blue Shield's Motion to Dismiss, or alternatively, Motion for Summary Judgment (docket entry # 11) be, and it is hereby, GRANTED IN PART AND DENIED IN PART.

ABCBS is entitled to judgment as a matter of law with respect to Regency's promissory estoppel claims based on medical services provided to James Blatt and Betty Crum. Those claims are dismissed with prejudice.

ABCBS is entitled to a dismissal based on Fed. R. Civ. P. 12(b)(6) with respect to Regency's promissory estoppel claims based on medical services to Kay Hopkins, Kenneth Amans, Geri House, Gene Ada Baker, Miles Langham, and Peter Steinke. As to those claims, Regency is granted leave to file an Amended Complaint that recasts its cause of action under ERISA, assuming that its attorneys can do so consistent with the requirements of Fed. R. Civ. P. 11(b). The Amended Complaint, if any, must be filed not later than January 7, 2010. If no Amended Complaint is filed by that date, the Clerk of the Court is directed to terminate this case.

IT IS SO ORDERED THIS   21st   day of December, 2009.

                                                    _/s/Garnett Thomas Eisele_____
                                                    UNITED STATES DISTRICT JUDGE