IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

REGENCY HOSPITAL COMPANY OF
NORTHWEST ARKANSAS, LLC                                        PLAINTIFF


V.                                    NO.  4:08CV04177 GTE


ARKANSAS BLUE CROSS AND BLUE
SHIELD, A MUTUAL INSURANCE COMPANY                   DEFENDANT


BRIEF IN SUPPORT OF ARKANSAS BLUE CROSS AND BLUE SHIELD'S
MOTION TO DISMISS AMENDED COMPLAINT, OR IN
THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT


Plaintiff, Regency Hospital Company, ("Regency") filed its original Complaint in

this case on November 3, 2008, claiming that Arkansas Blue Cross and Blue Shield

("ABCBS") was liable for hundreds of thousands of dollars for allegedly breaking a

promise about how much Regency would be paid for providing medical services to

patients who were insured by ABCBS or covered under health plans administered by

ABCBS or its affiliates.  These claims were asserted after negotiations broke down

between ABCBS and Regency about Regency's request to become an in-network

provider with ABCBS.  On December 21, 2009, the Court dismissed Regency's state law

promissory estoppel claims since there was no proof that ABCBS made any promise to

Regency or that Regency's reliance on the promises that it alleged ABCBS made was

reasonable.  The Court also rejected Regency's attempt to assert estoppel under federal

common law, finding that as a matter of law "equitable estoppel may not be used to vary

1

or contradict the language of an ERISA plan or to enlarge the benefits available under the plan."

As established in the affidavits filed earlier in this case, Regency opened its first Arkansas long term acute care ("LTAC") hospital[1] in Fayetteville in 2004, and opened its second Arkansas operation a short time later in Springdale.  Negotiations about Regency's admission to ABCBS's networks ceased because the in-network reimbursement rates offered by ABCBS were too low for Regency's liking.  Regency then embarked on a scheme to bring negotiating pressure to bear on ABCBS through litigation and through complaints to the Arkansas Insurance Commissioner.[2]  Regency's strategy was to call ABCBS's customer service representatives for the alleged purpose of "verifying benefits" prior to admitting a patient, and then later claim that the ABCBS customer service representative had promised or led Regency to believe that ABCBS would pay Regency's billed charges.  Regency would file suit alleging promissory estoppel or a similar state law claim to collect the difference between what was actually paid and what Regency had billed.  This strategy was pursued by Regency in states other than Arkansas, and with health insurers other than ABCBS.  See, e.g., Regency Hospital

---

[1] As is evident from the affidavit of Warren McDonald submitted previously in this case on September 11, 2009, Regency does not really constitute a "hospital" in any traditional sense because Regency typically fills only one or more floors within another established, traditional hospital, with patients being "admitted" to the Regency "hospital" merely by being wheeled from one floor of the separate, traditional hospital to a separate Regency-specific floor that has been leased or assigned to Regency for its LTAC operations.

[2] Regency ultimately accepted the in-network reimbursement rates offered by ABCBS, and in the spring of 2007 Regency became an in-network provider for some networks administered by ABCBS or its affiliated companies. See, Affidavit of Warren McDonald, ¶ 9.  Despite this, Regency pressed ahead with this and other litigation against ABCBS for patient claims arising prior to these in-network agreements.

of Cincinnati v. Blue Cross and Blue Shield of Tennessee, 2009 WL 1211743 (S.D. Ohio 2009); Regency Hospital Company of South Atlanta v. United Healthcare of Georgia, 403 F.Supp.2d 1221 (N.D.Ga. 2005).

In furtherance of its scheme, Regency filed eight separate lawsuits against ABCBS in Pulaski County, Arkansas Circuit Court on January 13, 2006, seeking reimbursement for eight patients that were treated at Regency's Fayetteville facility. These eight lawsuits all alleged promissory estoppel, just as Regency's claim in this case.[3]  In fact, one of the lawsuits claimed damages for Regency's treatment of Kay Hopkins, one of the patients involved in this case.

In September 2006, Regency also filed complaints over approximately thirty claims with the Arkansas Insurance Commissioner and met privately with the Commissioner about those complaints.  All eight of the 2006 Pulaski County Circuit Court lawsuits against ABCBS ultimately were dismissed for failure to prosecute, and after ABCBS responded to Regency's complaints to the Insurance Commissioner, the Commissioner took no action on Regency's complaints.

Despite these developments, Regency filed the complaint in this case in November 2008 relating to eight patients treated at Regency's Springdale facility -- again alleging promissory estoppel based on the same set of orchestrated "facts" – that

---

[3] All eight of these cases were styled Regency Hospital Company v. Blue Cross Blue Shield of Arkansas, and were filed in the Circuit Court of Pulaski County, Arkansas as Case Nos. 06-CV-00430; 06-CV-00433; 06-CV-00434; 06-CV-00435; 06-CV-00436; 06-CV-00437; 06-CV-00438; 06-CV-00439.  Four of these cases were removed to the United States District Court for the Eastern District of Arkansas as Case Nos. 4:06-CV-00318; 4:06-CV-319; 4:06-CV-320; 4:06-CV-321.  Regency's scheme was not limited to ABCBS.  Regency also filed suit on the same day against Qualchoice making a similar claim.  That case, Regency Hospital Company v. Qualchoice, Pulaski County Circuit Court No. 06-CV-00431, was tried and Regency's complaint was dismissed with prejudice on November 5, 2007.

Regency's representatives called ABCBS customer service lines to "verify benefits" and were allegedly promised in those calls that ABCBS would pay whatever Regency billed for its services, regardless of the terms of the applicable ERISA plans or policies of insurance. ABCBS conducted discovery to refute Regency's claims, and filed a motion to dismiss or for summary judgment. On December 21, 2009, the Court granted ABCBS's motion, dismissed Regency's state law claims, and gave Regency permission to refile its complaint under ERISA, if Regency could do so consistent with Rule 11.

Regency has now filed its Amended Complaint – but instead of asserting a claim for ERISA benefits under 29 U.S.C. §1132, Regency has thrown together a mashed up theory of ERISA liability that is not supported by either the facts in this case or the law under ERISA. As is evident from the documents filed in support of ABCBS's earlier motion to dismiss/summary judgment, ABCBS is not an ERISA plan administrator, and thus has no duty to provide plan documents, and is not liable under 29 U.S.C. §1132(c) for any alleged failure to do so. Likewise, Regency's claim that it is entitled to "damages" because ABCBS's policies and the other plan documents are allegedly not easy to understand is not actionable under ERISA. Actions for claims for benefits or for equitable relief are permitted under ERISA -- but not claims for damages. As a result, Regency's Amended Complaint, including its reasserted estoppel claims, must be dismissed. In addition, because of the history and circumstances of this needless litigation as outlined above, ABCBS should be awarded its costs and attorneys fees as provided in ERISA.

I.

## ABCBS IS NOT A PLAN ADMINISTRATOR
## AND IS NOT LIABLE UNDER 29 USC §1132(c).

In Count One of its Amended Complaint, Regency claims that pursuant to assignments of benefits from the patients involved in this case, Regency had the same rights under ERISA as those plan beneficiaries, that Regency requested plan documents and information from ABCBS, and that ABCBS failed to provide that information in the time permitted under ERISA. Regency asserts that the Court should fine ABCBS over $600,000 for failure to comply with §1132(c) of ERISA.

Apart from whether Regency even has standing to assert such a claim[4], or whether it would be appropriate under the circumstances for the Court to levy such penalties, Regency simply does not have a claim under §1132(c) as a matter of law because ABCBS is not a plan administrator under ERISA. Consequently, Regency's section 1132(c) claim fails. Ross v. Rail Car America Group Disability Income Plan, 285 F.3d 735 (8th Cir. 2002); Krauss v. Oxford Health Plans, Inc., 517 F.3d 614 (2nd Cir. 2008); Vanderklok v. Provident Life & Accident Ins. Co., 956 F.2d 610 (6th Cir. 1992).

Section 1132(c) of ERISA provides in relevant part:

Administrator's refusal to supply requested information; penalty for failure
to provide annual report in complete form

---

[4] It should be noted that the assignments on which Regency bases its claims do not refer to ERISA at all, and thus could not be effective to assign all of a patient's rights under ERISA, as Regency apparently now maintains. Instead, these assignments focus primarily upon assignment of the all-important right to *payment* from the insurer. Thus it is clear that Regency did not obtain standing, by virtue of its *payment* assignments, to assert any and all ERISA rights of the ERISA plan participants to whom it provided services.

(1) Any administrator

\* \* \* \* \*

(B) who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

For purposes of this paragraph, each violation described in . . . subparagraph (B) with respect to any single participant or beneficiary, shall be treated as a separate violation.

Thus, liability under §1132(c) is based on whether the defendant is an "administrator." This term is defined in ERISA at 29 U.S.C. § 1002(16)(A), to wit:

The term "administrator" means—

(i) the person specifically so designated by the terms of the instrument under which the plan is operated;

(ii) if an administrator is not so designated, the plan sponsor; or

(iii) in the case of a plan for which an administrator is not designated and a plan sponsor cannot be identified, such other person as the Secretary may by regulation prescribe.

Thus, the plan administrator is the plan sponsor, or some other person if specifically designated as such under the terms of the ERISA plan instrument.

ERISA also defines "plan sponsor" in §1002(16)(B):

The term "plan sponsor" means

(i) the employer in the case of an employee benefit plan
established or maintained by a single employer,

(ii) the employee organization in the case of a plan established or
maintained by an employee organization, or

(iii) in the case of a plan established or maintained by two or more
employers or jointly by one or more employers and one or more
employee organizations, the association, committee, joint board of
trustees, or other similar group of representatives of the parties
who establish or maintain the plan.

Again, under ERISA, ABCBS could only be liable under §1132(c) for failure to provide
information if ABCBS was either the employer/plan sponsor, or if the plan documents
specifically designated ABCBS as the plan administrator.

In its Amended Complaint, Regency neither alleges that ABCBS is the
employer/plan sponsor of any of the six listed plan beneficiaries, nor does it allege that
the ERISA plan documents relevant to any of those beneficiaries specifically list ABCBS
as the plan administrator.  Because a defendant's status as plan administrator is an
essential element of liability under 29 U.S.C. §1132(c), Regency's Amended Complaint
fails to state a claim for relief, and Count One of the Amended Complaint must be
dismissed under Fed.R.Civ.Proc. 12(b)(6).

Even if Regency's Amended Complaint did allege that ABCBS was a plan
administrator, it is clear from the affidavits and proof already filed in this case that
ABCBS was not the plan administrator for any of the six Regency patients still referred
to in Regency's Amended Complaint.  First, it is clear that ABCBS was not the employer
of any of the six Regency patients or any relative through which they might have ERISA
beneficiary status.  Consequently, ABCBS was not an employer, an employee

organization, or a multi-employer organization as set forth in the "plan sponsor" definition in 29 U.S.C. §1002(16)(B).

Second, the plan documents and ABCBS policies, filed on September 11, 2009 as exhibits to the affidavit of Victoria Charlesworth, do not designate ABCBS as the plan administrator, as required by 29 U.S.C. § 1002(16)(A).  For example, the Central States Manufacturing, Inc. Summary Plan Description, which was filed as Exhibit C-1 to Victoria Charlesworth's Affidavit and which governs Regency's claim for services it rendered to Geri House, states in relevant part:

> [p. 52] PLAN ADMINISTRATOR.  Central States Manufacturing, Inc. Employee Welfare Benefit Plan is the benefit plan of Central States Manufacturing Inc., the Plan Administrator, also called the Plan Sponsor. It is to be administered by the Plan Administrator in accordance with the provisions of ERISA.

* * * * *

> [p. 52] DUTIES OF THE PLAN ADMINISTRATOR:

> (1) To administer the Plan in accordance with its terms.

* * * * *

> (5) To keep and maintain the Plan documents and all other records pertaining to the Plan.

> (6) To appoint a Claims Administrator to pay claims.

> (7) To perform all necessary reporting as required by ERISA.

* * * * *

> (9) To delegate to any person or entity such powers, duties and responsibilities as it deems appropriate.

* * * * *

[p. 53] CLAIMS ADMINISTRATOR IS NOT A FIDUCIARY.  A Claims Administrator is not a fiduciary under the Plan by virtue of paying claims in accordance with the Plan's rules as established by the Plan Administrator.

\* \* \* \* \*

[p. 55] CERTAIN PLAN PARTICIPANTS RIGHTS UNDER ERISA. Plan Participants in this Plan are entitled to certain rights and protections under the Employee Retirement Income Security Act of 1974 (ERISA). ERISA specifies that all Plan Participants shall be entitled to:

\* \* \* \* \*

Obtain copies of all Plan documents and other Plan information upon written request to the Plan Administrator.  The Plan Administrator may make a reasonable charge for the copies.

\* \* \* \* \*

[p. 56] If the Plan Participant has any questions about the Plan, he or she should contact the Plan Administrator.

The Central States Manufacturing, Inc. Employee Welfare Benefit Plan Summary Plan

Description also contains a page [p. 57-58] that identifies various plan entities as follows:

EMPLOYER INFORMATION
    Central States Manufacturing Inc.
    302 Jane Place
    Lowell, Arkansas 72745

PLAN ADMINISTRATOR
    Director of Human Resources
    Central States Manufacturing Inc.
    302 Jane Place
    Lowell, Arkansas 72745

NAMED FIDUCIARY
    Chief Financial Officer
    Central States Manufacturing Inc.
    302 Jane Place
    Lowell, Arkansas 72745

CLAIMS ADMINISTRATOR
>BlueAdvantage Administrators of Arkansas
>P. O. Box 1460
>Little Rock, Arkansas  72203

Similar language and designations are contained in the Summary Plan Description for

Peterson Farms, Inc. which governs Regency's claim for services it rendered to Ada

Gene Baker.  <u>See</u>, Exhibit D-1 to the Affidavit of Victoria Charlesworth, pp. 65-70.

The ABCBS insurance policies that govern Regency's claims for services

rendered to Kay Hopkins, Kenneth Aman, and Peter Steinke also demonstrate that

ABCBS was not the plan administrator for the benefit plans covering those individuals.

For example, the insurance benefit certificate issued to Peter Steinke states:

### [p. 5] 1.0    HOW THE COVERAGE UNDER YOUR INSURANCE PLAN WORKS

1.1 Your employer has established and maintains an Employee health benefit plan ("Plan") for Employees and their eligible dependents.  The Employer administers the Plan and actively promotes the Plan to its Employees.  The Employer and you, through your premium contributions, have purchased a Plan of insurance benefits provided by the Group Policy and Benefit Certificate issued by Arkansas Blue Cross and Blue Shield, A Mutual Insurance Company that provides a range of coverage for medical services you may need.  This is a very valuable benefit for you, but you should understand clearly that your Plan does NOT cover all medical services, drugs, supplies, tests or equipment ("health interventions" or "interventions").  A Plan covering all health interventions would be prohibitively expensive.  For that reason we have offered and you have purchased a more limited Plan.  This document is your guide to what you have and have not purchased; in other words, what is and is not eligible for benefits under your Plan.  **Accordingly, you should read this entire document carefully both now and BEFORE you obtain medical services to be sure you understand what is covered and the limitations on your coverage.**

**[pp. 64-65] 10.0 YOUR RIGHTS UNDER ERISA**

The following information is provided to you in accordance with the
Employee Retirement Income Security Act of 1974 (ERISA). This
information and the information contained in this Benefit Certificate,
constitute the Summary Plan Description required by ERISA.

\* \* \* \* \*

**10.1  Information about the Plan**

As a participant in the Plan described in this Benefit Certificate, you are
entitled to certain rights and protections under the Employee Retirement
Income Security Act of 1974, as amended (ERISA). ERISA provides that
all plan participants shall be entitled to:

> 1.  Examine, without charge, at the Plan Administrator's office all
> plan documents, including insurance company contracts, and
> copies of all documents filed by the plan with the U.S. Department
> of Labor such as detailed annual reports and plan descriptions.
>
> 2. Obtain copies of all applicable plan documents and other plan
> information upon written request to the Plan Administrator. The
> administrator may make a reasonable charge for the copies.

\* \* \* \* \*

**10.5 Enforce your Rights**

\* \* \* \* \*

> 2.  [I]f you request materials from the Plan and do not receive them
> within 30 days, you may file suit in a federal court. In such a case,
> the court may require the Plan Administrator to provide the
> materials and pay you per day until you receive the materials,
> unless the materials cannot be sent because of reasons beyond the
> control of the administrator.

The Steinke insurance benefit certificate also contains a page [p. 70] that identifies the

various plan entities. The certificate copy attached as Exhibit G-1 to Victoria

Charlesworth's Affidavit is a specimen copy, but it specifies that the Plan Administrator

is the employer, and identifies Arkansas Blue Cross and Blue Shield as the "Health

Insurance Issuer." Similar language and designations are contained in the Insurance

Benefit Certificates that govern Regency's claim for services rendered to Kay Hopkins

and Kenneth Aman. See, Exhibit A-1 to the Affidavit of Victoria Charlesworth, pp. 5,

68-70, and Exhibit B-1 to the Affidavit of Victoria Charlesworth, pp. 5, 65-66. Finally,

although the policy that provides benefits for Mr. Langham is an individual conversion

policy, the policy was issued pursuant to conversion rights available under Mr.

Langham's prior ERISA group coverage. See, Exhibit E-1 to the Affidavit of Victoria

Charlesworth, p. 1 and Exhibit E-3 to the Affidavit of Victoria Charlesworth, p. 1. The

group policy formerly covering Mr. Langham would have had similar language

designating Mr. Langham's former employer as the plan administrator (and if it did not,

for any reason, as noted above, ERISA itself specifies that the employer-plan sponsor is

the "default" plan administrator).

Regency's Amended Complaint fails to allege that ABCBS is a plan administrator

as defined by ERISA for any of the six plans at issue in that pleading. Consequently,

Count One of the Amended Complaint must be dismissed pursuant to Fed.R.Civ.Proc.

12(b)(6). See, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167

L.Ed.2d 929 (2007); Taylor v. Kohler Company, 2009 WL 151208 (E.D.Ark. 2009).

Even if Regency had alleged that ABCBS was the plan administrator, ABCBS

would be entitled to judgment as a matter of law, because it is clear from the exhibits to

Victoria Charlesworth's affidavit, including Regency's own letters, that ABCBS was not

designated as plan administrator for any of the ERISA plans covering the individuals

named in the Amended Complaint.[5]  This is all the more significant given that Regency

was under a specific warning in the Court's December 21, 2009 order to be mindful of its

Rule 11 obligations.

In <u>Ross v. Rail Car American Group Disability Plan</u>, 285 F.3d 735 (8th Cir. 2002),

the Court addressed a similar claim where an insurance company that provided group

disability coverage for an employer's benefit plan was sued under §1132(c) for failure to

provide information about the plan's benefits to a plan beneficiary.  At issue was whether

changes to the plan had been made that decreased the amount of disability benefits.  The

plaintiff requested information about the plan documents from the insurer, and when the

information was not forthcoming, the plaintiff asserted a claim for penalties against the

insurer under §1132(c).  The Eighth Circuit dismissed this claim stating:

> Section 502(c) of ERISA allows the district court to impose a
> discretionary $100 per day fine on a plan administrator who fails to
> provide copies of certain plan documents to participants and beneficiaries.
> The district court entered summary judgment on counts three and four
> because it determined that Canada Life [the insurer] is not the Plan
> Administrator. Ross argues that this is in error because the Summary Plan
> Description is inherently ambiguous as to the identity of the
> Administrator, and because Canada Life served as claims administrator
> and was the repository of the Plan documents and thus should be held to
> be the de facto Plan Administrator.

---

[5] Regency, despite having sued ABCBS under section 1132(c), was fully aware that
ABCBS was not serving as plan administrator for these ERISA plans.  In three separate
instances Regency sent letters requesting plan documents not from ABCBS, but from the
employer designated as plan administrator under the relevant ERISA Plan.  See, e.g.,
Letter dated May 4, 2006 to Maynard, Inc. Health Plan Administrator, 1324 Van Asche,
Fayetteville, AR, attached as Exhibit B-4, p. ABCBS 556 to the Affidavit of Victoria
Charlesworth; Letter dated January 17, 2006 to Peterson Farms, Inc. Health Plan
Administrator, Decatur, AR, attached as Exhibit D-4 to the Affidavit of Victoria
Charlesworth; and Letter dated May 5, 2006 to Central States Manufacturing, Inc.,
ATTN: Health Plan Administrator, Lowell, AR, attached as Exhibit C-4 to the Affidavit
of Victoria Charlesworth.  The Maynard and Central States letters – despite clearly being
addressed to the respective employer-plan sponsors – are alleged in paragraph 13 of the
Amended Complaint to have been addressed to ABCBS.

> Ross's arguments cannot stand in the face of the uncontroverted facts,
> ERISA, and settled case law. The Summary Plan Description
> unambiguously identifies Rail Car as the Plan Administrator. Canada Life
> admits that it had control over claims under the policy, but assuming that
> function did not transform it into the Plan Administrator. ERISA
> specifically makes the Plan Administrator responsible for providing the
> Plan documents Ross requested, *see* 29 U.S.C. § 1024(b), and the
> Summary Plan Description directed that all requests for Plan documents
> be made in writing to the Plan Administrator.

285 F.3d at 743-44. See also, Moran v. Aetna Life Ins. Co., 872 F.2d 296 (9th Cir. 1989);

Vanderklok v. Provident Life and Accident Ins. Co., 956 F.2d 610 (6th Cir. 1992) (insurer

not liable under §1132(c) for failure to provide information); Thorpe v. Retirement Plan

of Pillsbury Co., 80 F.3d 439 (10th Cir. 1996) (only the administrator specifically

designated by the plan can be liable under section 1132(c); Krauss v. Oxford Health

Plans, Inc., 517 F.3d 614 (2d Cir. 2008) (insurance company that administered health

benefits for ERISA plan was not liable under §1132(c) regardless of whether it was also

an ERISA fiduciary); Settell v. Metropolitan Life Ins. Co., 633 F.Supp.2d 695 (N.D.

Iowa 2009) (insurer was not liable under §1132(c) either as named plan administrator or

as "de facto" plan administrator); Bass v. Prudential Ins. Company, 764 F.Supp. 1436 (D.

Kan. 1991) (insurer not liable under §1132(c) as plan administrator).

      Here, because Regency failed to allege that ABCBS was the plan administrator

Count One of its Amended Complaint must be dismissed pursuant to Fed.R.Civ.Proc.

12(b)(6). In addition, the Court should also take into account the fact – as conclusively

shown by Regency's own letters attached to Ms. Charlesworth's affidavit – that Regency

filed Count One with explicit, pre-existing knowledge that its allegations were inaccurate.

For example, not only did Regency lack any foundation to allege that ABCBS was the

plan administrator for any of the ERISA plans in question, it actually *knew* that ABCBS was not the plan administrator, and in at least three instances Regency actually sent its requests for plan information to the employer-plan administrators, not ABCBS.  Despite this knowledge, Regency has now sued ABCBS (after being warned by the Court to carefully consider Rule 11 implications) for alleged failure to respond to ERISA Plan information requests, even though  Regency's written requests for plan information were sent to the employer-plan administrators – Maynard, Inc., Central States Manufacturing, Inc., and Peterson Farms.  Because it is clear from the exhibits to Victoria Charlesworth's affidavit that ABCBS was not the plan administrator, not only should Regency's spurious claims of section 1132(c) violations be dismissed, but the Court should award ABCBS its attorneys' fees and costs incurred in defending against them.

II.

## REGENCY DOES NOT HAVE A
## CLAIM FOR DAMAGES UNDER ERISA

In Count Two of the Amended Complaint, Regency asserts that it is entitled to damages under ERISA because the benefits under the plans and policies at issue in this case are -- in Regency's opinion –not easy to understand and do not "give clear information concerning the benefits available under the plan."  On the Hopkins, Aman and Steinke claims, Regency argues that with regard to out-of-network benefits a

15

beneficiary (and by extension, Regency as assignee of such a beneficiary) could not tell "the benefits available for non-PPO providers, nor of the penalties for not using a network provider" (Amended Complaint ¶ 27), that this violates ERISA regulations (Amended Complaint ¶ 24), and that Regency has been damaged as a result in the amount of $210,174.46 (Amended Complaint ¶ 34). On the Baker claim, Regency argues that the policy does not define the phrase "allowable charge" (Amended Complaint ¶¶ 40-41) and that Regency has been damaged as a result of ABCBS's "failure to comply with the Federal Regulations" in the amount of $51,829.46 (Amended Complaint ¶43). On the Langham claim, Regency complains that the plan does not define "customary allowance," "basic reasonable charge," or "maximum allowable payment" (Amended Complaint ¶¶ 47-48), and that Regency has been damaged by ABCBS's failure to comply with ERISA regulations in the amount of $147,717.31 (Amended Complaint ¶ 53).

ABCBS denies that the summary plan descriptions and policies at issue in this case violate ERISA regulations or that they are unclear to participants and beneficiaries regarding the fundamental point that participants and beneficiaries may incur higher costs when using out-of-network providers. On the contrary, the summary plan descriptions and policies clearly warn participants and beneficiaries that their own out-of-pocket costs may increase significantly if they choose to utilize an out-of-network provider. [6]

———————————————

[6] By way of example, the ABCBS policies challenged by Regency contain detailed explanations of the financial impact on a Plan participant or beneficiary if an out-of-network provider is used. For example, as shown in Exhibit B-1 of Victoria Charlesworth's affidavit, filed previously herein, Section 5 of the ABCBS Aman policy is titled "Provider Network and Cost Sharing Procedures," and begins with the statement "The plan may afford you significant savings if you obtain coverage from Providers who are members of our Preferred Provider Organization . . . This Section explains how you can maximize your benefits under the Plan by using Preferred Providers . . . ." Subsection 5.1.3 on "Non-PPO Benefits" further explains that "Reimbursement for services by Non-

Furthermore, from the beneficiary's perspective (as opposed to Regency's perspective),

Regency's argument makes no sense. Any lack of clarity – far in advance of actual

treatment -- about the precise amount that a patient would owe an out of network

provider such as Regency for medical services is not a function of the terms of the

ABCBS policies or plans administered by ABCBS. Instead the beneficiary's liability is

primarily dependent on the amount or rate charged by Regency for its services, the extent

of the beneficiary's medical problem, and the length of time it takes to treat a particular

problem. These are factors that are outside the knowledge or control of ABCBS, the

more so where an out-of-network provider, with no contractual arrangement with

ABCBS, is concerned. Given the ability of an out-of-network provider to charge

whatever it wishes to charge – and given the terms of the relevant ERISA Plans at issue

here, which warn that a Plan participant or benefit may be subject to "balance billing" by

an out-of-network provider – it would be impossible for any ERISA Plan's summary plan

---

Preferred Providers generally will be less than payment for the same services when
provided by a Preferred Provider and could result in substantial additional out-of-pocket
expenses." Subsection 5.1.4 emphasizes the out-of-network exposure in bold typeface:
"**A Covered Person is responsible for billed charges in excess of the Company's
payment when Physicians or Hospitals who are neither Preferred Providers nor a
Contracting Provider render services. These excess charges could amount to
thousands of dollars in additional out-of-pocket expenses to the Covered Person**."
See Affidavit of Victoria Charlesworth, filed herein, Exhibit B-1, pp. 460-461. See also
ABCBS Hopkins policy language, Exhibit A-1 to Charlesworth Affidavit, pp.33-34
(same Section 5.0 provisions); ABCBS Langham policy language, Exhibit E-1 to
Charlesworth Affidavit, p. 339 AND 342 ("IMPORTANT NOTICE: IF YOU USE A
[HOSPITAL OR PHYSICIAN] WHO HAS A CONTRACT WITH THE COMPANY,
SUCH [HOSPITAL OR PHYSICIAN] HAS AGREED TO ACCEPT THE
COMPANY'S PAYMENT FOR COVERED SERVICES AS PAYMENT IN FULL . . .
IF YOU USE A NON-CONTRACTING [HOSPITAL OR PHYSICIAN] [IT/HE] IS
FREE TO BILL YOU CHARGES FOR COVERED SERVICES WHICH ARE IN
EXCESS OF THE COMPANY'S PAYMENT."; and ABCBS Steinke policy language,
Exhibit G-1 to Charlesworth Affidavit, pp. 283-285.

description to contain an advance listing of all possible provider charges.  Even for an in-network provider, it would be impractical, cost-prohibitive and ultimately useless to try to publish and distribute to participants and beneficiaries of an ERISA Plan a summary plan description that listed up-to-date charges and allowances for every possible procedure or service, or variation thereof, that a patient might require, and ERISA regulations do not require any such unreasonable level of detail or specificity.

Finally, from the beneficiary's perspective on the claims in this case, the problem of potential exposure to unknown, excess charges would not have existed if Regency had agreed to become an in-network provider earlier than it did, because in that event, the participants'/beneficiaries' exposure for all charges to Regency would have been limited to the ABCBS allowances, eliminating the need for participants and beneficiaries to be concerned with what Regency might charge.

Apart from these considerations, however, Regency simply does not have a claim for damages under ERISA.  Count Two of Regency's Amended Complaint is nothing more than an attempt to recast its state law promissory estoppel claim as a claim for misrepresentation under ERISA.  However, this is not permissible.

Under ERISA, the only relief available to Regency is specifically set out in 29 U.S.C. §1132(a).  That section provides as follows with respect to Regency's claims:

A civil action may be brought—

(1) by a participant or beneficiary—

(A) for the relief provided for in subsection (c) of this section, or

(B) to <u>recover benefits</u> due to him under the terms of his plan, <u>to enforce his rights</u> under the terms of the plan, or to

18

<u>clarify his rights to future benefits</u> under the terms of the plan;

(2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;

(3) by a participant, beneficiary, or fiduciary (A) <u>to enjoin any act or practice which violates any provision of this subchapter</u> or the terms of the plan, or (B) to <u>obtain other appropriate equitable relief</u> (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan. [emphasis supplied]

Thus, under ERISA, Regency – as assignee of a plan participant or beneficiary – may only bring an action to recover benefits according to the plan's terms, to enforce or clarify the terms of the plan as to future benefits, or to enjoin a violation of ERISA or for other equitable relief. ERISA simply does not permit an award of damages such as that sought in Count Two of Regency's Amended Complaint. See, e.g., <u>Massachusetts Mutual Life Ins. Co. v. Russell</u>, 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985) (ERISA's integrated enforcement provisions indicate that Congress did not intend to provide remedy of extra-contractual damages); <u>Mertens v. Hewitt Associates</u>, 508 U.S. 248, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993) (ERISA does not authorize an award for compensatory damages); <u>Great West Life and Annuity v. Knudson</u>, 534 U.S. 204, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002) (claim for money due and owing was classic legal claim and was not available under ERISA).

Courts have considered and dismissed damages claims based on errors or misstatements in plan documents similar to the claims asserted in Count Two of Regency's Amended Complaint. In <u>Flacche v. Sun Life Assurance Company</u>, 958 F.2d 730 (6th Cir. 1992), the Court held that errors in the ERISA benefit

19

certificate did not give rise to liability under §1132(a) of ERISA.  The Court

stated:

> Sun Life, however, is neither a plan fiduciary nor a plan administrator. For
> this reason, claims based on alleged arbitrary or capricious conduct are
> inapplicable to Sun Life. ERISA does not expressly provide for review of
> the facts supporting the Flacches' promissory estoppel claim. Because
> ERISA does not provide for review of the Flacches' estoppel claim, we
> view their argument as one for a private right of action that is not
> expressly authorized by ERISA. The Flacches never contended that the
> terms of the plan entitle them to the damages they seek. For this reason,
> we view their claim as one for extracontractual, compensatory damages.
> The Supreme Court recently entertained an argument for the implication
> of a private right of action against a fiduciary for extracontractual damages
> under ERISA. *See Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S.
> 134, 145-48, 105 S.Ct. 3085, 3091-93, 87 L.Ed.2d 96 (1985). Applying
> the four factor analysis prescribed by *Cort v. Ash,* 422 U.S. 66, 95 S.Ct.
> 2080, 45 L.Ed.2d 26 (1975), the Court concluded that two factors-
> legislative intent and consistency with the legislative scheme-prevented it
> from implying such a remedy. *See Russell,* 473 U.S. at 145-48, 105 S.Ct.
> at 3091-93. As the *Russell* opinion indicates, ERISA's civil enforcement
> provisions provide a reticulated, comprehensive scheme. Here, the
> Flacches would have us imply, under ERISA, a private right of action for
> extracontractual damages not against a fiduciary, as in *Russell,* but against
> a nonfiduciary. *A fortiori,* we decline the invitation to imply, under
> ERISA, such a private right of action against a nonfiduciary. [emphasis
> supplied]

958 F.2d at 737.

In Lewandowski v. Occidental Chemical Corporation, 986 F.2d 1006 (6th Cir.

1993), the Court dismissed a suit for damages predicated on the theory that the plan failed

to comply with ERISA's notice and disclosure provisions.  The plaintiff argued that if the

plan had properly disclosed the risks inherent in the plan's provisions, the beneficiary

would have taken action to avoid that risk.  The court found that ERISA provided no

extra-contractual damages remedy and dismissed the plaintiff's claim:

> As noted, plaintiff's argument is that but for defendant's failure to comply
> with ERISA reporting and disclosure mechanisms, Mr. Lewandowski

would have elected a retirement benefit protective of his wife. To support recovery on this theory, plaintiff must show a violation of ERISA that entitles her to a substantive damage remedy.

* * * * *

[ O]verwhelming authority cuts against the positions espoused in those opinions. Courts considering the issue rightly have refused to create a blanket ground for recovery not provided for in ERISA, either by precluding any damage award or limiting such award to the most egregious of circumstances. As the *Hozier* court theorized, ERISA's remedial scheme presents a detailed, reasoned compromise between plan participants' needs for adequate disclosure and the disincentives expansive liability for nondisclosure might present to employers considering institution of a retirement plan. Nothing in §1132 suggests that a plan beneficiary should receive a benefit award based on a plan administrator's failure to disclose required information. Rather, as the *Hozier* court held, § 1132(c) acts as an affirmative limit on possible remedies. Because plaintiff seeks recovery expressly based on defendant's failure to follow ERISA procedures, she may not recover.

* * * * *

Because ERISA does not remedy procedural violations with a damage award, defendant is entitled to judgment as a matter of law.

986 F.2d at 1007, 1009.  See also, Bolone v. TRW Sterling Plant Pension Plan, 130 Fed.Appx 761, 2005 WL 1027569 (6th Cir. 2005) (ERISA does not provide remedy for substantive claims for damages for violations of regulations regarding the format, style and content of plan documents); Hakim v. Accenture United States Pension Plan, 2009 WL 2916842 (N.D. Ill. 2009) (where claim for equitable relief under subsection (a)(3) is simply a repackaged claim to recover benefits, claim must be dismissed.).

In summary, Count Two of the Amended Complaint seeks extra-contractual damages based on Regency's claim that the ABCBS policies and the plan documents in this case do not comply with ERISA regulations.  ERISA does not provide a damages remedy for such a claim; furthermore, Regency has not brought a claim for benefits under

§1132(a)(1)(B). Consequently, Count Two of Regency's Amended Complaint must be dismissed.

III.

## COUNT THREE SHOULD BE DISMISSED BECAUSE THE COURT ALREADY HAS RULED AGAINST REGENCY ON ITS ESTOPPEL CLAIM

Count Three of Regency's Amended Complaint purports to incorporate Regency's original complaint and claim for estoppel in this case. Count Three contains no new or additional allegations relating to Regency's estoppel claim. ABCBS incorporates by reference its Motion to Dismiss or in the Alternative for Summary Judgment filed September 11, 2009 (Docket No. 11) and supporting briefs, affidavits and exhibits. Pursuant to the Court's December 21, 2009 Memorandum Opinion and Order (Docket No. 27), Count Three of the Amended Complaint should be dismissed. Furthermore, the Court should take into account that Regency re-filed this claim just over two weeks after the Court had ruled it invalid as a matter of law, despite the Court's warning that Regency should consider Rule 11 implications in its attempt to frame a valid ERISA claim. The excuse that Count III is asserted "solely for the purpose of preserving the original Complaint for appeal" is unavailing – Regency had a choice either to appeal the Court's December 21, 2009 Order or to file an Amended Complaint that complied with the Court's directives; instead, Regency chose to hedge its bets by attempting to revive a clearly invalid estoppel claim while also purporting to present new, valid ERISA claims, in clear defiance of the Court's admonition to stick to the latter.

## CONCLUSION

Regency's Amended Complaint should be dismissed pursuant to Fed.R.Civ.Proc. 12(b)(6) for failure to state a claim. Alternatively, Regency's Amended Complaint should be dismissed because ABCBS is entitled to judgment as a matter of law on the undisputed facts in this case. Regency's Amended Complaint fails to allege that ABCBS is a plan administrator for purposes of liability under 29 U.S.C. §1132(c). Furthermore, the policies and plan documents submitted in support of ABCBS's earlier Motion to Dismiss demonstrate that ABCBS is not the plan administrator as to any of the plans involved in this case, and the law is clear that only the plan administrator may be liable under 29 U.S.C. §1132(c). In addition, ERISA does not provide a damages remedy for failure to comply with ERISA procedural regulations relating to the formatting and content of plan documents as alleged in Count Two of Regency's Amended Counterclaim. Finally, Regency's estoppel claim previously was dismissed and should be dismissed again.

Respectfully submitted,

ARKANSAS BLUE CROSS AND BLUE
SHIELD, A Mutual Insurance Company,
Defendant

By its Attorneys:

Allan W. Horne
Mark H. Allison
DOVER DIXON HORNE PLLC
Suite 3700
425 West Capitol Avenue
Little Rock, AR 72201
(501) 375-9151
mallison@ddh-ar.com

By: *Mark H. Allison*

Mark H. Allison
Arkansas Bar No. 85001

## CERTIFICATE OF SERVICE

I hereby certify that on January 21, 2010, I electronically filed the foregoing with
the Clerk of the Court using the CM/ECF system, which shall send notification of such
filing to the following:

Tim Cullen
CULLEN & CO., PLLC
P.O. Box 3255
Little Rock, AR 72203

Ronald Hennings
LAW OFFICE OF RONALD J. HENNINGS, P.C.
3755 East Main Street, Suite 175
St. Charles, IL  60174

and, further, that a copy of the foregoing has been served upon Tim Cullen, CULLEN &
CO., PLLC, P.O. Box 3255, Little Rock, AR 72203; and upon Ronald Hennings, LAW
OFFICE OF RONALD J. HENNINGS, P.C., 3755 East Main Street, Suite 175,
St. Charles, IL 60174, by placing a copy in the United States mail addressed to such
attorney with sufficient prepaid postage, this 21st day of January, 2010.

*Mark H. Allison*

Mark H. Allison

24