IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | | |
|---|---|---|
| REGENCY HOSPITAL COMPANY OF NORTHWEST ARKANSAS, LLC. | ) ) ) | |
| Plaintiff | ) | No. 4:08 CV 04177 GTE |
| v. | ) ) | |
| ARKANSAS BLUE CROSS AND BLUE SHIELD, A MUTUAL INSURANCE COMPANY, | ) ) ) | |
| Defendant. | ) | |

**PLAINTIFF REGENCY HOSPITAL COMPANY OF NORTHWEST ARKANSAS, LLC'S BRIEF IN RESPONSE TO THE COURT'S REQUEST TO SHOW CAUSE**

NOW COMES PLAINTIFF, REGENCY HOSPITAL COMPANY OF NORTHWEST ARKANSAS, LLC. ("REGENCY"), by its attorney, and responds to the Court's Request to Show cause as follows:

I. **REGENCY's Amended Complaint Does Not Violate Rule 11**

A. **Rule 11 Standards**

Rule 11 was amended in 1993 to address concerns raised by the amendments in 1983. The 1983 amendments were criticized for spawning satellite litigation, abusing the Rules potential as a fee shifting device, exacerbating incivility among lawyers and between bench and bar, chilling creative advocacy, and disproportionately impacting plaintiffs over defendants. *Ridder v. City of Springfield*, 109 F. 3d 288 (6th Cir., 1997) As amended, Rule 11 states:

> By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,-

> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

Fed. R. Civ. P. 11(b).

Under Fed. R. Civ. P. 11(c), the imposition of sanctions is discretionary rather than mandatory. The amended rule also deemphasizes monetary sanctions and discourages direct payouts to the opposing party. Fed. R. Civ. P. 11 Advisory Committee Notes (1993 Amendments). See also *Ridder, Id.* 109 F.3d at 294. The purpose of Rule 11 sanctions is to reduce frivolous claims, defenses, or motions, and to deter costly meritless maneuvers. *Massengale v. Ray*, 267 F.3d 1298, 1302 (11th Cir.2001). Rule 11 requires district courts to impose appropriate sanctions, after notice and a reasonable opportunity to respond where an attorney or party submits a pleading to the court that: (1) is not well-grounded in fact and therefore has no reasonable factual basis; (2) is not legally tenable; or (3) is submitted in bad faith for an improper purpose. *Ricccard v. Prudential Insurance Company*, 307 F.3d 1277, 1294 (11th Cir.2002) (citing Fed.R.Civ.P. 11(b)). When testing conduct under Rule 11, a court is to use an objective standard and examine the reasonableness of the conduct under the circumstances and what was reasonable to believe at the time the pleading was submitted. *Custom Manufacturing and Engineering, Inc. v. Midway Services, Inc.*, 2006 WL 4792784 *2 (M.D.Fla. September 14, 2006) (citing *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir.1998)). "In making

this determination a two-step inquiry is required: (1) whether the party's claims are objectively frivolous, and (2) whether the person who signed the pleadings should have been aware that they were frivolous." *Custom Manufacturing,* 2006 WL 4792784 at * 2. Sanctions are warranted when a party exhibits a "deliberate indifference to obvious facts," but not when the party's evidence to support a claim is "merely weak." *Ricccard,* 307 F.3d at 1294 (citing *Baker v. Alderman,* 158 F.3d 516, 524 (11th Cir.1998).

In response to the Court's request, this brief is submitted to show that no Rule 11 violation occurred in this case.

    **B.    The Evidence Offered by Regency On Count I In Regency's Motion For Summary Judgment Demonstrates A Good Faith Argument Supported By Evidence Why Regency Was Entitled to Relief.**

The Court questions Regency's basis for filing the claim in Count I given that the obligations listed in Section 1132(b) apply only to plan administrators and that Arkansas Blue Cross Blue Shield (ABCBS) was not named as the plan administrator in any of the plans and was not the employer or sponsor of any of the plans. The evidence provided by Regency with respect to this issue shows that the claim was raised in good faith.

"Whether a defendant is a plan administrator is a factual question which requires an inquiry into the plan document and the factual circumstances surrounding the administration of the plan." *Carducci v. Aetna U.S. Healthcare,* 247 F.Supp.2d 596, 609 (D.N.J.2003), *citing Hamilton v. Allen-Bradley Co.,* 244 F.3d 819, 824 (11th Cir.2001). An Eighth Circuit District Court case from Minnesota addressed the possibility of a "de facto" administrator being liable for damages. *White v. Martin, individually as trustee and fiduciary of the Bob Martin Trucking, Inc. Profit Sharing Plan* 286 F. Supp. 2d 1029 (D. Ct. Minn., 2003). In *White,* the plaintiff alleged that Martin violated ERISA § 502(c)(1)(B), which penalizes the plan administrator for failing to

supply requested information within thirty days of a request by a Plan participant. The plan in *White* specifically designated Bob Martin Trucking as the Plan Administrator and that Lyn Martin did not fit any of ERISA's definitions of "plan administrator." The plaintiff claimed, however, that by virtue of her position and actions regarding the Plan, Lyn Martin was a "de facto administrator" and may be held liable under § 502(c)(1).

The District Court then noted that the Eighth Circuit has recognized a circuit split on whether a party other than one falling under the definitions of ERISA § 3(16) can be a de facto administrator of the plan. *See Hall v. Lhaco, Inc.*, 140 F.3d 1190, 1195 (8th Cir.1998) The Eighth Circuit declined to take sides on the issue in *Hall*, and has still not ruled on the question.[1] The Eleventh, First, and Fifth circuits have held that claims may be brought against persons who are not technically plan administrators but who have been delegated responsibilities for administering an ERISA plan. *See Hamilton v. Allen-Bradley Co., Inc.*, 244 F.3d 819, 824 (11th Cir.2001); *Law v. Ernst & Young*, 956 F.2d 364, 372-74 (1st Cir.1992); *Fisher v. Metropolitan Life Ins. Co.*, 895 F.2d 1073, 1077 (5th Cir.1990). The Third Circuit has not ruled on this question, but all the other circuits have ruled that liability under § 502(c) is limited to the targets expressly identified in ERISA § 3(16). *See Jones v. UOP*, 16 F.3d 141, 145 (7th Cir.1994); *Lee v. Burkhart*, 991 F.2d 1004, 1010 n. 5 (2d Cir.1993); *McKinsey v. Sentry Ins.*, 986 F.2d 401, 403-05 (10th Cir.1993); *Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54, 62 (4th Cir.1992);

---

[1] "We do not deem this to be the appropriate case upon which to decide the question, however, not least because of the lack of development of the record or argument on the question below — the district court and Hall seem to have assumed that LHACO was the plan administrator and LHACO did not argue to the contrary until this appeal, and then only in passing — but also because we find other impediments to Hall's assertion of his claim pursuant to § 502(a)(1)(B). Thus, we must reserve for another time the question of whether a party other than the one designated in ERISA plan documents can be sued under § 502(a)(1)(B) as a "*de facto*" plan administrator." *Hall,* Id. at 1195

*VanderKlok v. Provident Life & Accident Ins. Co.,* 956 F.2d 610, 617-18 (6th Cir.1992); *Moran v. Aetna Life Ins. Co.,* 872 F.2d 296, 298-300 (9th Cir.1989); *Davis v. Liberty Mutual Ins. Co.,* 871 F.2d 1134, 1138 (D.C.Cir.1989). *White,* Id. at 1044-1045. Though the *White* court followed the view that only a plan administrator named in the plan was liable for damages, the case shows that this issue is far from "well established."

The *Law v. Ernst & Young* cited above discusses this issue in detail. In that case, Ernst & Young argued that it cannot be held personally liable under the statute because its predecessor, Arthur Young, was not the plan administrator, citing the ERISA provision that says that the term 'administrator' means-(i) the person specifically so designated by the terms of the instrument under which the plan is operated...." The Court held that, for purposes of Law's § 1132(c) claim, the district court properly regarded Arthur Young as the plan administrator. The court's determination was supported by the plethora of evidence indicating that Arthur Young had assumed and controlled the plan administrator's function of furnishing required information in response to a plan beneficiary's request.

Likewise, in *Vega v. National Life Ins. Servs. Inc.,* 145 F.3d 673 (5th Cir.1998), the insurance plan summary identified the employer, not the insurance company, as the plan administrator. *Id.* at 677. Moreover, the agreement between the employer and the insurance company explicitly stated that the insurer was not "deemed to be a 'named fiduciary' or 'Plan Administrator' as defined by ERISA." Despite the plain language in the Plan, the court concluded that the insurer "was indisputably the plan administrator and fiduciary with respect to paying insurance claims," based on the fact that claims were sent to the insurer on its own proof of loss forms and it was responsible for paying such claims. Relying on the definition of "administrator" provided in 29 U.S.C. § 1002(16)(A)(i), the Court concluded the insurer was

"the person specifically so designated by the terms of the instrument under which the plan is operated." *Vega,* Id at 677..

The evidence and documents provided in Bobby Franklin's affidavit in support of the Motion for Summary Judgment provides the requisite basis for a finding that ABCBS was the "de facto" plan administrator. Exhibit D to the affidavit is a letter received from Maynard, Inc., the purported plan administrator for the Amman admission[2]. In that letter, a request was made for the documents proscribed in Section 1132(b). In response, Maynard, Inc. directed Regency to obtain those documents from Ms. Charlesworth at ABCBS. Of the five other patients at issue in this case, Bobby Franklin's affidavit shows that four other purported plan administrators instructed Regency to do the same. Of the six patients at issue, Regency was specifically instructed to contact ABCBS for the documents for the five alleged in Count I. Only the employer for the House admission provided the documents without first directing Regency to ABCBS[3]. See Bobby Franklin's affidavit (Docket #38) in support of Regency's Motion for Summary Judgment.

---

[2]At the time Regency sent letters to the employers, Regency had no information about any plan administrators, and were at the mercy of the employers to provide that information. Of the six employers contacted, five responded by instructing Regency to contact ABCBS for the documents, and the other one provided the documents. Not until ABCBS provided "specimen" copies of the plans in their original Motion for Summary Judgment, well after the original Complaint was filed, did Regency ever have any information that someone other than ABCBS was the plan administrator.

[3]The Court's Memorandum Opinion and Order states at page 5 that Regency "seeks to recover for ABCBS's alleged failure to timely provide copies of the Summary Plan Descriptions for Kay Hopkins, Kenneth Aman, Geri House, Gene Ada Baker, Miles Lanham, and Peter Steinke." Paragraph 14 of the Amended Complaint states that Regency received the plan for Geri House within the time frame set forth under ERISA. No claim for any relief in Count I was ever requested for the Geri House account. As indicated in previous pleadings, the employer for the Geri House account was the only employer who did not direct Regency to request the documents from ABCBS.

Ms. Charlesworth's conduct and responses to the five requests that were then directed toward her gives further support to Regency's claims that ABCBS was acting as a plan administrator. Ms. Charlesworth, upon receiving Regency's request for documents stated "I will send a copy of Mr. Langham's Arkansas Blue Cross and Blue Shield benefit certificate and his Schedule of Benefits to his home address. He can share this information with you if he desires." ABCBS' conduct gives rise to the appearance that ABCBS was acting as and assuming the responsibilities of a plan administrator. This type of conduct supports a good faith argument, if not a finding based on the cases cited above, that ABCBS was a plan administrator. If ABCBS was not acting as a plan administrator, why would ABCBS say that it would send the documents to the patient? Charlesworth's letter provides a good faith argument that ABCBS was either acting as the plan administrator, had been delegated and undertook that duty, or had voluntarily accepted the responsibility to produce the documents under Section 1132(b). Additionally, since there is no question that ABCBS administers the claims portion of the health insurance, this case is very similar to the *Vega* case which found that the insurance company was a plan administrator. Other documents in Regency's Motion for Summary Judgment provides further support that Count I was brought in good faith and was based on the law. See Exhibits B, C, E, F, G, I, J and K of Bobby Franklin's affidavit in support of Regency's Motion for Summary Judgment.

The Court in its opinion relies heavily on the *Davis v. Liberty Mutual Ins. Co.*, 871 F. 2d 1134 (D.C. Cir., 1989) in questioning why Regency filed its claim. The facts in *Davis* show that the case is distinguishable from the present case. The plaintiffs in *Davis* directed their only request for documents to Liberty Mutual and not the employer. The holding states that the Davis' never sent a written request for the documents to the employer. *Davis*, Id. at 1138. No

allegations were made that the employer instructed the Davis' to get the information from Liberty Mutual, nor was there any indication from Liberty Mutual that they would send the documents. There were never any evidence which would support a claim that Liberty Mutual had an obligation to send the documents to the Davis'. Lacking the above, there was nothing in *Davis* which could have led the court to believe that Liberty Mutual was acting as a plan administrator.

Contrasting the *Davis* case with this case, Regency directed a written response to the employers. Five of those employers directed Regency to request and obtain the documents from ABCBS. When Regency sought the documents from ABCBS, ABCBS first questioned the assignment of benefits and Regency's right to receive the documents. Ms. Charlesworth's letters acknowledged an obligation on behalf of ABCBS to send the documents, then stated she would not send them to Regency, but to the patient instead. See the affidavit of Bobby Franklin, attached to the brief in support of Regency's Motion for Summary Judgment. This evidence, lacking in the *Davis* case, forms the basis for the allegations that ABCBS was a de facto plan administrator, if not an actual plan administrator. Nowhere in any of their letters does ABCBS deny that it was the plan administrator.

Based on the above, Regency has submitted enough documents, evidence, and a course of action by ABCBS to support the good faith argument that ABCBS was a plan administrator, or at a minimum, a de facto administrator, under the case law cited above. Regency believes that the documents and evidence presented in support of its Motion for Summary Judgment establish a good faith belief for the claims in Count I, and that Count I is warranted by existing law. At a minimum, Regency, under the holding in *Carducci,* believes it established a question of fact as to whether ABCBS was a "plan administrator" under the terms of the plans at issue.

Based on the foregoing, Regency does not believe that Count I violates Rule 11.

C.     **Count II Seeks Relief Allowed Under 29 U.S.C. 1132(a)(1)(B) Though the Prayer For Relief Is Incorrect.**

Regency has proffered an argument that sections in the insurance agreements are illusory and in violation of the requirements contained in 29 CFR 2520.102-2, and could not support ABCBS' denial of benefits under that section. Had the Court agreed with that allegation, Regency, as a plan participant or beneficiary, would have been enforcing its rights under the terms of the plan and would have clarified rights to future benefits under the plan. Either of those two provisions set forth in 29 U.S.C. 1132 (a)(1)(B) would suffice to show that Regency was entitled to relief, though equitable, and not monetary, in nature. If the provisions cited in Count II are unenforceable, the basis for ABCBS payments on the accounts would have been overturned, and the claims reconsidered under a provision compliant with the Code of Federal Regulations.

Regency recognizes that it should have requested a finding that the equitable remedy that clauses were unenforceable, then, if successful, asked ABCBS to reconsider the claims under a compliant provision. However, with respect to Count II, there has never been a ruling on Regency's claims that the provisions in question are illusory. The decision states that Regency is not entitled to the monetary relief sought, and grants ABCBS' Motion on that basis. In reviewing Rule 11 case law, Regency has not found any case where sanctions were awarded against a party merely for seeking the wrong relief. As listed above, Rule 11 is designed to prevent frivolous pleadings designed to harass opponents and to needlessly drive up the cost of litigation. In Count II, Regency identified terms in the contracts that it believes are illusory, presented valid legal arguments in support of its position, and cited the Federal Regulations to show that clarity in these agreements is required. The Court ruling did not make any findings

about the provisions in question, nor did it address Regency's arguments about the same. Count II was not designed to harass ABCBS nor to drive up the cost of litigation. Cogent, legal arguments, founded in the law, were advanced as to why the language in the plans was illusory. That the wrong relief was requested does not make the claims "frivolous."

This situation is the reason behind the "Safe Harbor" provisions of Rule 11 identified by the Court in its Memorandum Opinion and Order on page 10. The "Safe Harbor" provision is designed to put a party on notice of potential violations and the opportunity to correct the same. A time period is given so counsel, after put on notice of a defect, has an opportunity to withdraw or correct a pleading that allegedly violates Rule 11. In this case, Count II could have been amended to asking for the equitable relief that is available under ERISA. Absent a finding that the allegations about the contract language were frivolous and not well founded in law or a good faith argument for the allegations, Rule 11 sanctions are not appropriate because Count II asks for the wrong relief.

### III.   Conclusion

In light of the above cases and the evidence supplied by Regency in this case, no Rule 11 violation occurred. Additionally, both counsel involved (Cullen and Hennings) have submitted Affidavits outlining their good faith basis for the claims advanced. Based on these authorities and affidavits, Regency believes it has demonstrated that the claims raised in the Amended Complaint are well supported in fact and are nonfrivolous. Thus, Regency prays for a finding that no Rule 11 violation occurred. Regency believes this finding can be made based on this response and the affidavits; however, if the Court is not so persuaded, Regency respectfully requests the opportunity to make an evidentiary record before any sanction be imposed.

Respectfully submitted,

Regency Hospital Company of

Northwest Arkansas, LLC

By: /s/ Tim Cullen
Tim Cullen, #97062
Cullen & Co., PLLC
P.O. Box 3255
Little Rock, AR 72203
(501) 370-4800 telephone
(501) 370-9198 fax

AND /s/ Ronald J. Hennings
Law Office of Ronald J. Hennings, P.C.
3755 East Main Street, Suite 175
St. Charles, IL 60174
(630) 513-1600

## CERTIFICATE OF SERVICE

I, Tim Cullen, hereby certify that on the 20th day of August, 20101111, I forwarded the foregoing pleading via the Court's electronic noticing system to the following:

Mark H. Allison
DOVER DIXON HORNE PLLC
Suit 3700
425 West Capitol Avenue
Little Rock, AR 72201

/s/ Tim Cullen
Tim Cullen

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | | |
|---|---|---|
| REGENCY HOSPITAL COMPANY OF NORTHWEST ARKANSAS, LLC. | ) ) ) | |
| Plaintiff | ) | No. 4:08 CV 04177 GTE |
| v. | ) ) | |
| ARKANSAS BLUE CROSS AND BLUE SHIELD, A MUTUAL INSURANCE COMPANY, | ) ) ) | |
| Defendant. | ) | |

**AFFIDAVIT OF RONALD J. HENNINGS**

NOW COMES YOUR AFFIANT, RONALD J. HENNINGS, first being sworn and stating as follows:

1. I am an attorney licensed to practice law in Illinois since 1984. I am currently in good standing.

2. I am also licensed to practice law in the Federal Court System in the following jurisdictions: Northern District of Illinois, 1984, Seventh Circuit Court of Appeals, 1990, United States Supreme Court, 1991, Northern District of Indiana, 2000, and Eastern and Western District Courts of Arkansas, 2009. I am currently in good standing in all jurisdictions listed.

3. I am a sole practitioner with an office in Saint Charles, Illinois.

4. I have been representing hospital and medical providers with insurance disputes and other reimbursement issues for over twenty years.

5. I currently serve as the Vice-chair of the Health Care Law Committee of the DuPage Bar Association and was the Chair of that Committee in 2007-2008.

6. I am also a member of the Health Care section of the Member Attorney Program of the American Collection Association.

7. I have litigated cases under the Employee Retirement Income Security Act (ERISA) on behalf of various hospitals and medical providers.

8. I was retained by Regency Hospital to handle the issues in the present case. At the time the case was started, I was not licensed in Arkansas. I contacted Mr. Cullen to act as local counsel in this case.

9. The Amended Complaint in this action was filed in good faith based upon current law. As our brief demonstrates, there is a split in the Circuits over whether a party not named in the plan documents can be deemed an administrator for purposes of ERISA penalties.

10. The Eighth Circuit Court of Appeals acknowledged such a split in *Hall v. Lhaco, Inc.*, 140 F.3d 1190. The *Hall* court also reserved the right to answer the question presented in Count I of the Amended Complaint.. I have not found any case from the Eighth Circuit Appellate Court which has resolved this issue in the circuit.

11. Knowing that such a split exists and that the Eighth Circuit has not taken a position, I believe that the claims alleged in Count I were not frivolous, nor brought in bad faith, but are warranted by case law, especially based on the holding in the Fifth Circuit case of *Vega v. National Life Ins. Servs., Inc.*

12. I also believe that the matters asserted in Count II were brought in good faith, were not frivolous, nor meant to needlessly increase the cost of litigation.

13. The allegations are supported by tenets of contract law, and valid legal arguments exist to support those allegations. I do recognize that the incorrect relief was sought in Count II, but still believe that the claim asserted is presented in good faith and is not frivolous.

14.     My research of the issues present here found no cases where sanctions were awarded for seeking a wrong remedy in a prayer for relief. Had we been realized the mistaken prayer for relief, we would have asked for leave to amend.

15.     My research of the issues present here found that none of the Circuits who ruled against an alleged de facto administrator found the arguments frivolous or brought in bad faith..

16.     Based on the case law, I believe there was a good faith argument to claim that Arkansas Blue Cross Blue Shield was a "plan administrator" as alleged in the Complaint.

17.     Based on the above, I believe I have meet all of my obligations under Fed. R. Civ. P. 11 as there is case law to support the positions set forth in the Amended Complaint, the claims were not frivolous, not brought in bad faith, nor brought to needlessly drive up the cost of litigation.

FURTHER SAYETH YOUR AFFIANT NOT.

_____
Ronald J. Hennings.

Subscribed and sworn before me this
20th day of August, 2010.

_____
Notary Public

OFFICIAL SEAL
S.E. DeMars
NOTARY PUBLIC, STATE OF ILLINOIS
My Commission Expires 9-29-2012